(No. 31275.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JESSE SMITH, JR., Plaintiff in Error.

*Opinion filed November 22, 1949.*

DAN H. McNEAL, and WILMOT F. WARNER, both of Moline, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and REYNOLDS M. EVERETT, State's Attorney, of Cambridge, (HARRY L. PATE, of Tuscola, of counsel,) for the People.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error, Jesse Smith, Jr., hereinafter referred to as the defendant, was indicted in the circuit court of Henry County for the unlawful killing of one James Cox. Two separate indictments were returned against him, one charging manslaughter, the other murder. Motions to quash the indictments being denied, defendant waived a jury and, by agreement, went on trial on both indictments before the court. The court found the defendant not guilty of murder but guilty of the charge of manslaughter as alleged in the indictment. Motions in arrest of judgment and for a new trial being overruled, judgment was entered and defendant was sentenced to the penitentiary for a term of from one to fourteen years.

The question presented for determination is whether or not the evidence established guilt of the defendant on the charge of manslaughter beyond a reasonable doubt, error being assigned on this question.

The record discloses that on the night of October 3, 1948, defendant and three companions were in a tavern at Sheffield, where the defendant became involved in an altercation with a man by the name of Huber. The bartender in the tavern intervened and told them to go outside if they wanted to fight. Huber then invited defendant outside where a fight followed. The defendant apparently getting the best of the struggle returned to the tavern and was seated at the bar when Cox, the deceased, who was a friend of Huber, came in and demanded to know who had been fighting with Huber. On being told, he accosted the defendant saying he would "take him in." The bartender again intervened and Cox went outside. The defendant was also advised he had better leave, which he did by the back door. He got in his truck with one Petty and started toward his home in Kewanee. Shortly thereafter Cox reentered the tavern, learned that defendant had left,

went to Huber's car and started to follow defendant on the highway.

There was considerable difference in the statements of the parties as to just what occurred on the highway, but it is apparent Cox was attempting to stop the defendant's car by blocking the highway. It was rather a wild ride with the deceased in pursuit of the defendant. At the edge of Kewanee the defendant turned his car off the highway to the home of his sister, where he occasionally lived, pursued by Cox. When he reached his sister's home he jumped out of the truck, took a metal crank and ran toward the house, shouting for his sister. As Cox in close pursuit in his car approached, defendant ran around to the rear of the house. The deceased drove up and went to the front door where he was confronted by defendant's brother-in-law, one Johnson, who had come to the door in answer to the cries of the defendant. Cox asked for defendant and was told if he was looking for trouble he must leave. About this time two other cars, which had followed in the pursuit from the tavern, drove up, and the defendant came from behind the house and up on the porch where Cox and Johnson were engaged in the above conversation. As defendant came on the porch he held up the crank which he still had in his hand, but made no move to attack Cox. Cox then attacked the defendant forcing him against the porch railing, and while engaged in this struggle he collapsed.

There seems to be no dispute as to what occurred on the porch with reference to the deceased making an assault on the defendant and pinning him over the bannister, but as to any blows being struck by the defendant, who had the crank in his hand, there seems to be sharp conflict. Johnson, who had come out on the porch answering the cries of the defendant, testified he took the crank from the defendant's hands before the deceased collapsed. A witness by the name of Duncan, who had followed in the pursuit, was standing in the front yard and testified he saw defend-

ant strike the deceased, and that he collapsed. The fact that the porch was dark except for light coming through the front door and the visibility poor somewhat weighs against this testimony.

After the struggle Cox was taken to a hospital where he died the next morning of a traumatic subarachnoid hemorrhage of the brain. No mark or scar was found on the exterior of the deceased's head which would indicate he had been struck, but the examining doctor testified the hemorrhage could have been caused from a blow by a blunt instrument, or by the head striking a solid object, and there might be no external wound. He also testified that such a hemorrhage might be caused by a quick movement of the head.

Several witnesses testified that one Petty, who was on the porch, afterwards admitted it was he who struck Cox with an iron hammer. Petty denied that he made such statement.

It is apparent from the evidence the only substantial conflict is concerning the events which transpired on the Johnson porch. The People's evidence tends to show that after defendant came upon the porch he was attacked by Cox and that defendant repelled the attack by striking Cox with the crank. The undisputed medical evidence discloses that no mark indicating the blow was found on the exterior of deceased's body, though the hemorrhage which caused his death could have been the result of a blow even though no exterior wound appeared. A medical witness stated that the hemorrhage could have been caused by a quick movement of the head or by the head striking a solid object. But, even though it could be assumed that death was the result of a blow struck as charged, defendant contends it was justified in self-defense.

From the evidence here it appears the defendant had been the object of a continuous assault beginning in the tavern at Sheffield and continuing in the long pursuit to

Johnson's porch, where the defendant was assaulted by the deceased and shoved back over the porch railing. It is undisputed that Cox was at least three or four inches taller and forty pounds heavier than the defendant, and that Cox had attempted to lay violent hands on the defendant at the tavern and then pursued him over some fifteen miles of highway and up to the door of the Johnson home.

The rule in this State is that a man may deliberately use a deadly weapon in self-defense and may intend to kill his opponent and yet not be guilty of either murder or manslaughter. (*People* v. *Davis,* 300 Ill. 226.) If one who is not the first assailant is in a place where he has a lawful right to be and is put in apparent danger of his life or of suffering great bodily harm, he need not attempt to escape but may lawfully stand his ground and meet force with force even to the taking of his assailant's life. (*People* v. *Durand,* 307 Ill. 611.) Nor is it necessary that the deceased should have used against his slayer a deadly weapon to justify a killing in self-defense. *People* v. *Turner,* 385 Ill. 344.

In this case, however, we find the defendant was found guilty of manslaughter, and it is upon that phase of the indictment his conviction must stand or fall. In cases of voluntary manslaughter, there must be a serious and highly provoking injury inflicted upon the person killing, sufficient to excite an irresistible passion in a reasonable person, or an attempt by the person killed to commit a serious personal injury on the person killing. The killing must be the result of that sudden, violent impulse of passion supposed to be irresistible; for if there should appear to have been an interval between the assault or provocation given and the killing, sufficient for the voice of reason and humanity to be heard, the killing shall be attributed to deliberate revenge, and punished as murder. (Ill. Rev. Stat. 1947, chap. 38, par. 362.) This section refers only to cases of

voluntary manslaughter where the killing is the result of a sudden impulse of passion supposed to be irresistible. It has no application to a plea of self-defense. The killing must be the result of that sudden, violent impulse of passion supposed to be irresistible. (*People* v. *Hunter,* 365 Ill. 618.) We find no evidence in this case of such sudden impulse of irresistible passion which precluded deliberation. The record discloses, as we have hereinabove pointed out, that the defendant had been the object of a continuous assault beginning in the tavern and ending on the porch of the Johnson home. It is obvious without question, upon the evidence as disclosed by the record here, that the use of the crank by the defendant was not the result of a sudden impulse of passion, but was a deliberate undertaking of self-defense at a time when he was being assaulted. The killing, under the circumstances as disclosed by the record, could not have been manslaughter.

The rule has long prevailed that it is the duty of this court in criminal cases to review the evidence, and, if it is found there is insufficient credible evidence, if it is improbable or unsatisfactory, or not sufficient to remove all reasonable doubt of defendant's guilt and create an abiding conviction that he is guilty, the conviction will be reversed. *People* v. *Sheppard,* 402 Ill. 347; *People* v. *Willson,* 401 Ill. 68; *People* v. *Holt,* 398 Ill. 606.

We find no evidence here from which a conviction for manslaughter could have been reached, and since it does not appear that any other evidence could be adduced upon another trial, (*People* v. *Sheppard,* 402 Ill. 347,) the cause will not be remanded for a new trial. The judgment is therefore reversed.

*Judgment reversed.*