The People of the State of Illinois, Plaintiff-Appellee, v.
Evelyn Simpson, Defendant-Appellant.

Gen. No. 50,439.

First District, First Division.

November 9, 1966.

Philip M. Basvic, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Thomas M. Burnham, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendant, Evelyn Simpson, was indicted for murder and voluntary manslaughter. On motion of defense counsel a preliminary sanity hearing was ordered which resulted in a jury finding the defendant competent. At the subsequent jury trial the defendant was convicted of voluntary manslaughter and was sentenced to serve eight to twelve years in the Women's Reformatory.

It is contended by the defendant that (1) the trial court erred in denying her petition to suppress her statement to the police; (2) that the State failed to prove

the corpus delicti in its case in chief; (3) that the prosecutor's personal attack on the defendant's attorney prevented her from having a fair and impartial trial; (4) that the trial court erred in excluding knowledge of the defendant of the victim's reputation for violence when intoxicated; (5) that the prosecutor's attack on defendant in his summation to the jury prevented the defendant from receiving a fair and impartial trial; (6) that the trial court erred in allowing State's Instruction No. 17; (7) that the defendant was not found guilty beyond a reasonable doubt and (8) that the sentence is excessive.

The defendant first contends that her statement made to the police should have been suppressed as it was not given voluntarily. The record reveals that after the jury found the defendant competent to go on trial the defendant made a motion to suppress her confession and a pretrial hearing took place before the trial judge. The defendant argues that her motion to suppress should have been sustained on the grounds that her emotional background and the circumstances prior to and surrounding the making of her statement rendered it involuntary. The basic inquiry is whether the confession was voluntary. "The determination of this question depends not upon any one factor, but upon the totality of all the relevant circumstances." People v. Nemke, 23 Ill2d 591, 600, 179 NE2d 825. In support of her motion the defendant testified that she was arrested on November 4, 1963, and later in the evening she was placed alone in a room at the police station which had but one chair and no running water or toilet. She asked a police officer (who was typing ten feet from her) on several occasions, either to go to the bathroom, for a cigarette, a glass of water or coffee and was told each time, "Just a moment." She said she didn't know what time she was placed in the cell and that she decided to give a statement because she was so tired, sleepy and hungry. She said that a man,

indicating Robert Kenny, (an Assistant State's Attorney) told her "Do you want to write on this paper? And then you can go up and go to sleep." Then she gave the instant statement.

Detective Henry Kaminski testified that the defendant was taken to the police station about 8 p. m. and placed in a detention room which had a couple of long benches and wooden chairs. About 3:00 a. m. the defendant told him "Her mother was turning over in her grave and that she wanted to tell me everything." He said he didn't recall the defendant making the alleged requests, but they would have complied if she did. Robert Kenny, an Assistant State's Attorney, and a court reporter who was present, testified that when the defendant made her statement she did not complain of hunger or lack of sleep or that she was denied toilet facilities. Kenny denied telling her that "The quicker you tell me about it, the quicker you will get some sleep."

 The trial judge concluded that he found no evidence of psychological torture as means of inducing the taking of the statement as alleged and denied the motion to suppress. The defendant relies on People v. Price, 24 Ill2d 46, 179 NE2d 685, and Reck v. Pate, 367 US 433. These cases are clearly distinguishable. In each, the accused was subjected both day and night to intensive interrogation sessions while being illegally held for a period of days. Nor did the defendant in the instant case suffer the physical discomforts described in the cited cases. In our opinion the record does not disclose an abuse of discretion by the trial judge in concluding that the statement was made voluntarily.

The defendant next complains that the State rested its case without having established the corpus delicti of the crime and that it was an abuse of discretion for the court to permit the State to reopen its case and introduce in evidence the protocol and pathological report. The record shows that after the State rested its case in chief

445

and during the time the defendant was offering witnesses on his behalf, the State asked leave to reopen its case to present a stipulation as to the testimony of the pathologist. It is clear from the record that the prosecutor forgot to offer this stipulated evidence in the proper order. The defendant's counsel admitted that he entered into such a stipulation with the prosecutor as to the pathologist's report, but he objected to the report being received in evidence because the offer came after the State had rested its case and was therefore too late.

"It is in the sound discretion of the trial court whether a case may be opened up for further evidence, and this discretion will not be interfered with except where it is clearly abused." People v. Franceschini, 20 Ill2d 126, 169 NE2d 244. In that case the trial judge suggested to the prosecutor, after both sides had rested, that evidence be offered to show how entrance to the apartment was gained. The Supreme Court in rejecting the claim that this was an abuse of discretion to defendant's prejudice, said that there is no inflexible rule in matters of this kind and that "as a general proposition, it is never improper for a judge to aid in bringing out the truth in a fair and impartial manner." P 132. It was apparent to the trial judge in the instant case that the parties had stipulated to the report of the pathologist being entered into evidence and that it was merely an oversight on the part of the prosecutor in not offering the report in the proper order. In our opinion this manner of procedure did not injure the defendant nor prejudice his defense.

The defendant further contends that the prosecutor's attack on her attorney during closing argument prejudiced the jury and prevented her from having a fair and impartial trial. After having carefully reviewed the record, it appears to us that improper remarks made by the defendant's counsel in his argument provoked improper replies. The court upon objection properly told

the jury to disregard the statement made by the prosecutor. We think that any prejudice that might have resulted to the defendant was removed by the timely ruling of the court and by the instructions to the jury. ■ ■ The defendant also contends that where self-defense is alleged it was error to exclude defendant's knowledge of the victim's reputation for violence while intoxicated. We agree with the defendant that where self-defense is alleged, and where it is claimed that the deceased victim was the aggressor and the assailant, the defendant has the right to prove that the deceased was known to her to be a violent and dangerous man. People v. Davis, 29 Ill2d 127, 193 NE2d 841. On this issue the record reveals that when the defendant was asked if the deceased was drunk at the time she stabbed him, she answered, "He had to be drunk because I never heard him curse until he got drunk." The excluded testimony of defendant that was offered concerned one isolated instance which occurred two months before the killing when the deceased, while intoxicated, was involved in a fight with a man and that the defendant knew of that occurrence. The court sustained the objection to this testimony, and no other evidence was offered to show the reputation of the deceased for being a violent and dangerous man. This testimony, in our opinion, was properly excluded as it related only to one specific act by the deceased and is not the proper method for proving the victim's character, or to qualify the defendant to give reputation testimony. In People v. Moretti, 6 Ill2d 494, 523, 129 NE2d 709, the Supreme Court stated that:

> This court, on numerous occasions, has held that reputation witnesses must be shown to have adequate knowledge of the person queried about and that evidence of reputation, to be admissible, must be based upon contact with the subject's neighbors

■■■■■■

and associates rather than on the personal opinion of the witness.

■ The defendant also complains that the prosecutor attacked her reputation in his summation to the jury intending purely to inflame and prejudice the jury against the defendant. We have examined the record and conclude that the prosecutor relied on evidence and inferences from contradictory testimony given by defendant to support his argument. It is also clear that the remarks were not a material factor in defendant's conviction.

■ It is next contended that the instruction given to define voluntary manslaughter was objectionable because it recites the 1947 statute instead of the 1961 statute and that it was error to give this instruction in any event where the plea was self-defense. No other instructions are abstracted as required under Supreme Court Rule 38. Ill Rev Stats 1963, ch 110, § 101.38. In People v. Robinson, 27 Ill2d 289, 292, 189 NE2d 243, the Supreme Court said:

> We have consistently held where the abstract of record includes only the instruction complained of without regard to the other instructions, both given and refused. . . . We will not inquire whether the trial court erred in this respect.

Nevertheless, we have examined the instruction complained of, and are of the opinion that the plea of self-defense did not render the instruction improper nor was the giving of the instruction prejudicial. The State points out that five instructions offered by the defendant were given to the jury which repeatedly pointed out that self-defense is a lawful justification for homicide. Had the defendant been convicted of murder, rather than manslaughter, the defendant could have been prejudiced by the instruction as given.

██ ██ The defendant further contends that there is a reasonable doubt concerning the guilt of the defendant of the voluntary manslaughter charge. The Criminal Code of 1961 provides that a person who kills an individual without lawful justification commits voluntary manslaughter if, at the time of the killing, he is acting under a sudden and intense passion resulting from serious provocation by the individual killed. Ill Rev Stats 1961, ch 38, § 9–2. "The killing must be the result of that sudden, violent impulse of passion supposed to be irresistible." People v. Smith, 404 Ill 350, 355, 88 NE2d 834. It is argued here that "there is no evidence in this case of such sudden impulse with precluded deliberation." In view of this contention it is necessary to review the evidence.

The record discloses that the defendant was living in a common-law relationship with Joseph Holmes in a two-room apartment on the same floor as that occupied by Thomas Perry and Mildred Mackey. They used a community kitchen. An argument occurred between the defendant and Mildred Mackey, in the latter's apartment when Mildred refused to clean the kitchen stove. Both girls had been drinking and in a scuffle Mildred hit the defendant with a baseball bat and when the defendant was getting the best of the fight Mildred yelled to Thomas Perry, who was not in the room, for help. At the trial the defendant testified that she then ran to the door in a dazed condition when a man she said was Thomas Perry grabbed her by the hair and said, "I am going to break your neck. Turn loose that bat and I am going to break your neck." She said she wrestled free from his grip and got into her room which was about six feet away and ran into her kitchen and grabbed a knife. She said she heard Mildred run down the stairs and then Perry said, "Did she come in here? I am going to kill you. Did she come in here?" and she told him, "Please don't come in my house, please God, don't come in my house." And he said. "I am coming in your house and find where Millie

is." And she said "Don't cross my door, please God, don't cross my door. And I remember his foot crossed that door. . . . I reached up and stabbed him."

In her written statement, in which she made narrative answers, she was asked:

> Q. And you got your knife out of your cabinet where your dishes are and when you hit him with the knife, where was he in the apartment?

> A. When I hit him? When I run back to him? He was standing naked in the living room, the pink one right by my two rooms.

When asked whether Perry had anything in his hand at the time she answered, "He was naked. He came out of the tub." When the police arrested her she told them that Mildred Mackey (who was deceased at the time of the trial) stabbed Perry. The jury could have found from the evidence that the defendant under a sudden and intense passion ran back into Perry's apartment with a large butcher knife and stabbed him. We think there was sufficient evidence to justify the jury in finding the defendant guilty of voluntary manslaughter.

█ The defendant also claims that "the sentence was excessive considering that the accused was 47 years old, had no other felony convictions, and was twice committed to a mental institution." The defendant was sentenced by the court, (who held a presentence hearing in aggravation and mitigation and who also saw and heard the witnesses), to serve a prison term of not less than eight nor more than twelve years which is within the limits fixed by the statute. We find no basis for disturbing the sentence.

The judgment of the Criminal Court is affirmed.

Judgment affirmed.

KLUCZYNSKI, P. J. and MURPHY, J., concur.