**The People of the State of Illinois, Plaintiff-Appellee, v. Troy Barnett, Defendant-Appellant.**

Gen. No. 69–186.

Second District.

June 16, 1970.

Rehearing denied July 30, 1970.

Wayne B. Flanigan, Assistant Public Defender, of Waukegan, for appellant.

Jack Hoogasian, State's Attorney, of Waukegan, Nello P. Gamberdino and Thomas M. P. Hannigan, Assistant State's Attorneys, for appellee.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

The defendant, Troy Barnett, was prosecuted in the Circuit Court of Lake County on an indictment for murder and voluntary manslaughter. The jury returned a verdict finding him guilty of voluntary manslaughter and he was sentenced by the court to a term of two to five years imprisonment. Defendant moved for a new trial alleging, among other things, that the issue of voluntary manslaughter was not properly raised, and that he was either guilty of murder or was innocent under the law of self-defense. This motion was denied and defendant appeals to this court.

Defendant and the decedent, his wife Lola, lived together with her 15-year-old daughter, Patricia Grier, in an apartment in North Chicago. Their domestic life was far from tranquil. In fact, decedent had filed a complaint for separate maintenance, or, in the alternative, divorce, on November 29, 1968. However, they had become reconciled. According to the testimony of Patricia, they argued and disagreed a good bit of the time, but never exchanged physical blows. On the evening of February 19, 1969, they were arguing when decedent threat-

ened to throw defendant out of the home and said she "didn't have to have a man beat on her." Patricia said defendant appeared to have been drinking that evening. Decedent went into the bedroom and threw defendant's ties on the floor in his presence and pushed a portable TV toward him, and then went into the dining room. Shortly afterward, Patricia said, she heard three shots, whereupon she left the home and went to a relative's home. She did not witness the shooting.

Defendant testified that he had purchased a .38 Smith & Wesson revolver in November of 1968, and had given it to decedent. It was a five-shot revolver. The cylinder revolves when the trigger is pulled. The hammer has to be cocked each time it is fired, or the trigger has to be pulled all the way back so that the hammer will come back and fall on the cartridge to fire the shot. The empty casings remain in the revolver. Defendant testified that he had not been drinking that evening. During the disagreement between them, he went into the dining room where decedent continued to upbraid him; she said she was not joking and threatened to throw him out; that "she came out of her bosom with a pistol" and that he was too close to her to get out of the door, so he rushed at her, and grabbed her hand. The gun was in her right hand and it went off, the bullet hitting the wall behind him. They continued scuffling and the gun discharged two more times. He was holding on to her hand, her finger was on the trigger, when the gun was discharged. After the third shot, she weakened; he took the gun from her and fled. He surrendered to the police on March 3, 1969. He stated that he did not attempt to kill his wife.

A qualified pathologist, who performed the autopsy on decedent, testified that powder burns indicated one shot was fired at close range, 12 to 18 inches, from decedent's face entering the left cheek and ultimately lodging in

the carotid sheath, which is composed of connective tissue enclosing large vascular structures, different portions of which are essential to life. The other bullet entered the right chest piercing the upper and lower lobes of the right lung. In his opinion either wound could have been fatal.

The superintendent of the Bureau of Criminal Investigation for the State of Illinois identified the spent bullets introduced in evidence as being from the same .38 Smith & Wesson revolver. The clothing worn by decedent when she was shot was badly decomposed, but he estimated from an examination of the clothing, that the gun was at a "distance greater than contact" when the shot was fired that entered her chest.

The issue here is whether the facts adduced at the trial pertaining to "sudden and intense passion resulting from serious provocation" warrant the submission to the jury of an instruction and verdict form of voluntary manslaughter. Defendant argues that as a matter of law the evidence did not warrant the submission of such an instruction and verdict form. To the contrary, the State submits that the totality of the evidence presented must be considered, and where the evidence would permit the jury to find the defendant guilty of manslaughter, it is not error for the trial court to give instructions and verdict forms on manslaughter.

█ █ Voluntary manslaughter is committed by a person "if at the time of the killing, he is acting under a sudden and intense passion resulting from serious provocation," and serious provocation is defined as "conduct sufficient to excite an intense passion in a reasonable person." Ill Rev Stats 1967, c 38, § 9–2(a). Defendant contends that mere words are insufficient to evidence serious provocation. People v. McMurry, 64 Ill App2d 248, 251, 212 NE2d 7. With this the State agrees, but avers the factual situation here presented not only a

vocal argument, but an act of serious provocation, culminating in the decedent threatening to throw the defendant out of the home and drawing a gun and pointing it at him. Just prior to these acts, she had thrown his ties on the floor, shoved a television set at him, and cursed him. There is no time interval between decedent's drawing the gun from her person and pointing it at the defendant; immediately he rushed her and a violent struggle ensued. We cannot agree with the defendant that these facts support his contention that there was no serious provocation making a voluntary manslaughter instruction improper.

■ Defendant also states that mere gestures cannot support a conviction of voluntary manslaughter. The People v. Washington, 27 Ill2d 104, 109, 187 NE2d 739, but we consider drawing a pistol and pointing it at defendant more than a mere gesture.

During the trial the defendant pleaded self-defense and claims that he was either guilty of murder or innocent by reason of self-defense. He relies upon The People v. Newman, 360 Ill 226, 231, 195 NE 645, in which the court held there was insufficient evidence to support a conviction of manslaughter since the evidence admitted of but one of two conclusions—either that the defendant was guilty of murder, or innocent under the law of self-defense. However, in Newman, the evidence showed a lapse of time between the provocation and the killing. Defendant also relies on The People v. Smith, 404 Ill 350, 354, 88 NE2d 834, where it was held there was an improper conviction for manslaughter. In that case, the court held that the facts revealed that the use of a crank by the defendant was not the result of a sudden impulse of passion, but was a deliberate act of self-defense at a time when defendant was being assaulted.

The general rule as to what constitutes voluntary manslaughter is stated in the Smith case as follows, p 354:

74

"In cases of voluntary manslaughter, there must be a serious and highly provoking injury inflicted upon the person killing, sufficient to excite an irresistible passion in a reasonable person, or an attempt by the person killed to commit a serious personal injury on the person killing. The killing must be the result of that sudden, violent impulse of passion supposed to be irresistible; for if there should appear to have been an interval between the assault or provocation given and the killing, sufficient for the voice of reason and humanity to be heard, the killing shall be attributed to deliberate revenge, and punished as murder."

 It seems clear that the rapid sequence of events in the case before us precludes any interval sufficient for the voice of reason to be heard, or an act of deliberate revenge, and qualifies as a sudden impulse of irresistible passion.

Defendant also cites the recent case of People v. Hall, 118 Ill App2d 160, 254 NE2d 793, but that is not analogous to this case. The factual situation there did not create a heat of passion situation, but rather a situation of either guilty of murder or a finding of innocence by reason of self-defense.

The People v. Taylor, 36 Ill2d 483, 489, 224 NE2d 266, says: "It is only where the evidence establishes that the defendant is guilty of murder or is not guilty, as for example in cases in which the defense is alibi, or mistaken identity, that a defendant may be said to have a right not to have the jury charged as to lesser included offenses."

 Having carefully considered all of the evidence, we cannot say that the defendant has the right here to have the jury determine whether or not he is guilty of murder and no other lesser offense. On the basis of

the record it was not improper to submit to the jury an instruction and verdict form on voluntary manslaughter. Therefore, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

DAVIS, P. J. and SEIDENFELD, J., concur.