THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DONALD EUGENE EVANS, Defendant-Appellant.

Third District No. 79-93

Opinion filed May 30, 1980.

Robert Agostinelli and Thomas Lilien, both of State Appellate Defender's Office, of Ottawa, and Theodore A. Gottfried, of State Appellate Defender's Office, of Springfield, for appellant.

Bruce Black, State's Attorney, of Pekin (John X. Breslin, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Defendant Donald Eugene Evans was indicted for murder. After a jury trial in the circuit court of Tazewell County, he was found guilty of that crime and sentenced to a term of 18 to 50 years in the Department of Corrections. This appeal is from that conviction.

On December 2, 1977, defendant took his son to school and, after concluding his work at Pizza Hut, went to his sister-in-law's residence to see his wife and children. Defendant's family had not lived with him in the marital home since early October when his wife had left him and removed the children. The parties had been married for 12 years. While the Evans family was living with Mrs. Evans' sister on December 2, they had previously been living with the deceased, Charles Gobart, whom Mrs. Evans had met at her place of employment. Shortly after taking residence with the deceased, Mrs. Evans had filed for divorce but was still married to defendant at the time of trial.

When defendant neared his sister-in-law's home, he observed his family leaving with the deceased and pulled up around a corner with the lights of his automobile turned off. Defendant testified he had turned his lights off because he "didn't want any trouble from Charles Gobart," as the deceased had previously chased him around town several times and both his wife and son had related various threats from Gobart. The defendant had parked his automobile six blocks from the marital home on occasion for fear of Gobart's wrongdoing. The marital home had been twice vandalized since the Evans' separation, and defendant suspected the deceased was responsible. Upon seeing defendant, Gobart blocked the intersection with his automobile, and defendant jumped the curb in order to pass the obstacle. Defendant nonetheless followed the deceased, at least once passing the vehicle and looking into it.

Defendant followed the victim's automobile to a local K-Mart and parked nearby. Under his driver's seat was a small nickel-plated .38-caliber Colt revolver which he had purchased in 1975. He observed the occupants of the victim's automobile enter the store, the deceased and his wife walking arm-in-arm, and return to the automobile in approximately 20 minutes. At that time, defendant pulled his automobile near the Gobart vehicle. He testified that he asked his wife if she would talk to him and she voiced no response. Mrs. Evans testified defendant told the deceased to "come on," and Gobart thereafter drove behind the store to avoid the defendant. Defendant testified that Gobart thereafter chased him around the parking lot, blocking his exit in the process.

The deceased and Evans' family then traveled to Vogel's Market Square to go grocery shopping, and they again were followed by defendant. Gobart parked his automobile in front of the store, and the Evanses went in to shop while he remained near or inside the store's double door where a patio connected with the building. When defendant saw the deceased near the doorway, he put his automobile in reverse and attempted to leave the parking area when his engine died. At approximately this time, Gobart started to come after him. Defendant testified the deceased was running straight at him and yelling "I'm going to kill you," while he shouted back "Stay away". While this verbal exchange was uncorroborated at trial, four witnesses observed Gobart charge defendant's automobile. Defendant then put his transmission in "Park" in order to start his engine and attempted to start the automobile with his right hand while reaching under his seat for the revolver with his left hand. The deceased continued to charge defendant and defendant fired the gun at him. Gobart never stopped his charge until the fourth of five shots entered his chest. Gobart died from a wound of the aorta resulting in massive blood loss within the hour. Defendant was arrested in Jacksonville, Illinois, the following afternoon.

On appeal, defendant contends he was improperly convicted of murder as the evidence established he was acting under sudden and intense passion resulting from serious provocation, which mandates a conviction of manslaughter. The People contend defendant is precluded from this contention by the theory of self-defense he presented in the trial court and that the evidence established the requisite mental intent for the murder conviction.

Considering first the People's contention that defendant is precluded from requesting that his murder conviction be reduced to one of voluntary manslaughter by his assertion of a self-defense theory in the trial court, we note that instructions regarding both issues were presented to the jury. The People assign no error to this procedure on appeal, but cite *People v. Parker* (1976), 40 Ill. App. 3d 597, 352 N.E.2d 394, for the proposition that the manslaughter question may not be considered by this court. In *Parker*, the jury was instructed that voluntary manslaughter was an unreasonable belief that circumstances existed which justified the killing of the deceased and as to the elements of that crime, in addition to being instructed as to the use of force in self-defense. A tendered instruction that the offense could be the killing of an individual while acting under sudden and intense passion resulting from serious provocation was refused and the court cited *People v. Clark* (1973), 15 Ill. App. 3d 756, 305 N.E.2d 218, for the proposition that a "defense of deliberate self-defense negatives an inference of sudden and intense passion." (*People v. Parker* (1976), 40 Ill. App. 3d 597, 603, 352 N.E.2d 394, 401.) In *Clark*, the court had cited *People v. Smith* (1949), 404 Ill. 350, 88 N.E.2d 834, for that proposition but nonetheless considered whether the evidence presented established such provoked passion. In *Smith*, we find the origin of the proposition following a reference to the statutory authority regarding voluntary manslaughter:

"In this case, however, we find the defendant was found guilty of manslaughter, and it is upon that phase of the indictment his conviction must stand or fall. * * * (Ill. Rev. Stat. 1947, chap. 38, par. 362.) This section refers only to cases of voluntary manslaughter where the killing is the result of a sudden impulse of passion supposed to be irresistible. It has no application to a plea of self-defense. The killing must be the result of that sudden, violent impulse of passion supposed to be irresistible. (*People v. Hunter*, 365 Ill. 618.) We find no evidence in this case of such sudden impulse of irresistible passion which precluded deliberation. * * *" (*People v. Smith* (1949), 404 Ill. 350, 354-55, 88 N.E.2d 834, 836.)

We note the court's reference to the cited statutory section having no application to a plea of self-defense but further note its consideration of

the evidence presented concerning voluntary manslaughter. While we would agree that the lack of a tendered instruction on manslaughter would produce a different result where a reviewing court would be trying the defendant again on a different legal theory (*People v. McKinney* (1968), 40 Ill. 2d 372, 240 N.E.2d 577), we note evidence has even been considered in this situation, albeit in cursory fashion. See *People v. Yates* (1978), 65 Ill. App. 3d 319, 382 N.E.2d 505, 509.

■■ In the case at bar, four manslaughter instructions (IPI Criminal Nos. 7.03, 7.04, 7.05, 7.06) were tendered by defendant, given by the court, and considered by the jury. Although the People objected to the two instructions involving provoked passion (IPI Criminal Nos. 7.03, 7.04), no error is assigned to their presentation by the trial court. Under these circumstances, we do not find our review of the substantive issue herein to be barred by the negation of any inference concerning the lesser-included offense.

Directing our attention to defendant's contention that his murder conviction should be reduced to a conviction of voluntary manslaughter, the relevant statutory authority is section 9—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 9—2), which provides in pertinent part:

> "(a) A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:
>
> (1) The individual killed * * *
>
> Serious provocation is conduct sufficient to excite an intense passion in a reasonable person.
>
>    * * *"

The test of serious provocation is seen to be that of the reasonable person, and only a few categories of provocation have been recognized. These include substantial physical injury or assault, mutual quarrel or combat, illegal arrest, and adultery with the offender's spouse, but do not include mere words or gestures or trespass to property. (Ill. Ann. Stat., ch. 38, par. 9—2, Committee Comments—1961, at 393 (Smith-Hurd 1979).) Representative decisions are collected in the above-cited Committee Comments and in *People v. Simpson* (1978), 74 Ill. 2d 497, 384 N.E.2d 373.

Defendant argues that there were at least eight elements of serious provocation by the deceased which would have excited an intense passion in a reasonable person. Included among the eight elements are the defendant's fear of, and lack of physical size in relation to, the deceased; the fact that Gobart had chased and threatened defendant; the fact that the deceased was living with defendant's wife and defendant saw the

couple embrace the evening of the homicide; and the fact that Gobart was charging defendant's automobile and, according to defendant's testimony, threatening to kill him at the moment of the slaying.

With the exception of those events occurring on the day of the homicide, the elements of provocation cited by defendant are remote in time to the homicide. Where sufficient time has intervened between the provocation and the homicide to permit the voice of reason to be heard, the crime cannot be manslaughter but if any crime be committed, it must be murder (*e.g., People v. Tanthorey* (1949), 404 Ill. 520, 89 N.E.2d 403), bearing in mind that time is dependent upon the facts and circumstances of each case (*e.g., People v. Washington* (1963), 27 Ill. 2d 104, 187 N.E.2d 739), and the ultimate standard is that of a reasonable person (Ill. Rev. Stat. 1977, ch. 38, par. 9—2).

Charging the defendant's automobile and allegedly threatening to kill him, and to a lesser extent the other elements occurring on the day in question, were not similarly remote in time to the incident; however, the sufficiency of those elements of provocation to cause sudden and intense passion is a matter to be determined by the trier of fact. (*E.g., People v. Hammock* (1979), 68 Ill. App. 3d 34, 385 N.E.2d 796; *People v. Yates* (1978), 65 Ill. App. 3d 60, 382 N.E.2d 421; *People v. Beathea* (1974), 24 Ill. App. 3d 460, 321 N.E.2d 458.) Likewise, the conflicting testimony presented on the matter of the deceased's purported threat as he charged the automobile was considered by the jury. Indeed, the defendant's conduct could have been considered by the jury to have provoked the conduct of the deceased rather than being a reaction to it. When such evidence is presented, it is the province of the trier of fact to determine whether provocation sufficient to reduce the conviction of murder to manslaughter in fact existed. *People v. Hurst* (1969), 42 Ill. 2d 217, 247 N.E.2d 614, *vacated in part on other grounds sub nom. Hurst v. Illinois* (1972), 408 U.S. 935, 33 L. Ed. 2d 749, 92 S. Ct. 2854.

A court of review will not set aside a jury's verdict unless the evidence presented at trial is so improbable as to raise a reasonable doubt of guilt. (*E.g., People v. Yarbrough* (1977), 67 Ill. 2d 222, 367 N.E.2d 666.) We do not find the proof so unsatisfactory to require a reversal, and we are satisfied from our review of the record that there was sufficient evidence that the defendant's actions were not the result of sudden and intense passion stemming from the serious provocation of the deceased.

Accordingly, the judgment of the circuit court of Tazewell County is affirmed.

Affirmed.

BARRY and SCOTT, JJ., concur.