THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLARENCE COLEMAN, Defendant-Appellant.

First District (1st Division)   No. 82—3108

Opinion filed May 14, 1984.

Frazin & Fisher, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, James S. Veldman and Adam A. Dabek, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGLOON delivered the opinion of the court:

Following a jury trial, defendant Clarence Coleman was convicted of murder and sentenced to serve 30 years in the Illinois Department of Corrections.

On appeal, defendant contends that the trial court committed reversible error by: (1) limiting defense counsel's cross-examination of a prosecution witness for the purpose of impeachment concerning her

prior omission of a material fact from a police report; (2) refusing to give the jury manslaughter instructions based on provocation; and (3) denying defense counsel the right to question jurors during *voir dire* regarding their attitudes on self-defense.

We affirm.

Three witnesses to the murder testified for the State at trial: Dee Hinton, Mary Weeks and Ernest Walker. All three witnesses knew both defendant and the victim, James Fluker.

Dee Hinton testified that at 7:30 p.m. on August 28, 1981, she was watching television in her apartment. When she looked out the window during a commercial break, she noticed two men standing by the side of the street. They were about a foot apart and were talking to one another. She did not see a gun in either man's hand. Although her view of the two men was unobstructed, she observed them for a split second. After she turned back to watch television, she heard a shot. She looked up and saw one man lying on the ground and the other walking away.

Mary Weeks testified that at the time of the shooting, she was sitting by her bedroom window which overlooks a church located on the east side of Justine Street in Chicago. At the time, she had known Fluker for eight years and defendant for four years. She noticed Fluker and defendant walking along opposite sides of Justine. When defendant reached Weeks' window, he crossed the street and stood directly in front of Fluker. She further testified that defendant held a nickel-plated gun in his right hand as he crossed the street. She was also able to see that Fluker did not have a gun in either hand. Weeks stated that when she looked away, she heard a shot. She quickly turned back to look outside and saw sparks in the church window in back of defendant. She pulled her shade down and waited a few minutes. When she raised the shade, she saw Fluker lying on the sidewalk. Later that evening, Weeks was interviewed by police officers at her apartment. On cross-examination, Weeks testified that she told the police that she saw defendant with a silver gun in his hand. She could not remember the name of the officer who took her statement.

The third witness for the State was Ernest Walker. Walker testified that on the evening of the shooting, he was standing on the west side of Justine Street about 20 feet north of defendant. He testified that defendant was holding a chrome-plated gun in his hand when he walked up to Fluker. He further testified that he saw defendant shoot Fluker in the chest. On cross-examination, Walker stated that Fluker did not have a gun when he was shot.

Defendant testified that on August 28, 1981, he and Fluker had a

fight over a debt. Police broke up the fight, but neither he nor Fluker wished to file a complaint. About 20 minutes later, defendant left his home with a gun in his belt. He approached Fluker and suggested that they "try to iron this problem out." Defendant denied having a gun in his hand when he approached Fluker. He further testified that he pulled out his gun and shot Fluker after Fluker reached for his gun.

During cross-examination, defendant estimated that 40 minutes passed between the time defendant was attacked by Fluker and the time defendant shot Fluker. He also admitted that he was not angry when he shot Fluker.

The jury found defendant guilty of murder. This appeal followed.

First defendant contends that the trial court erred in not permitting defense counsel to impeach Mary Weeks through an alleged prior omission of a material fact. The alleged omission arises from a police report prepared by Detective Rankin, the officer who interviewed Weeks after the shooting. The report did not include Weeks' statement that she saw defendant cross the street with a nickel-plated gun in his right hand. It did, however, include the statement which Weeks allegedly made to Detective Rankin that she saw defendant shoot Fluker.

During a side-bar conference, defense counsel sought the court's permission to question Detective Rankin regarding whether Weeks told him that she saw a gun in defendant's hand when he crossed the street. The trial judge would not permit defense counsel to question Rankin about the omission of this fact from the police report. However, the trial judge would permit defense counsel to question him regarding whether Weeks told him that she saw defendant shoot Fluker because she had testified to the contrary at trial.

■■ A proper foundation must be laid before a witness may be impeached by prior inconsistent statements. (*People v. Smith* (1980), 78 Ill. 2d 298, 399 N.E.2d 1289; *People v. Almo* (1984), 123 Ill. App. 3d 406.) To establish a proper foundation the witnesses must be asked about the time, place and circumstances of the statement. (*People v. Henry* (1970), 47 Ill. 2d 312, 265 N.E.2d 876.) The purpose of a proper foundation is to alert the witness to any prior inconsistent statement or omission in order to avoid unfair surprise and to permit him full opportunity for explanation. *People v. Moses* (1957), 11 Ill. 2d 84, 142 N.E.2d 1.

■ In the instant case, defense counsel asked Weeks if she told the police who interviewed her that she saw defendant with a silver gun in his hand. Therefore, she was alerted to the substance of the

remark which was omitted from the police report. She was not, however, alerted to the identity of the person to whom the statement was made. Defense counsel asked Weeks if she remembered talking to Officers Bedren or Rockowicz. She was never asked about any conversation she had with Detective Rankin. We conclude that there was no foundation laid for impeachment of Weeks through the testimony of Detective Rankin.

■ Furthermore, we find that the trial court allowed defense counsel wide latitude in his attempt to impeach Weeks despite this lack of foundation. (*People v. Cox* (1981), 100 Ill. App. 3d 272, 426 N.E.2d 1050.) Defense counsel was permitted to examine Detective Rankin concerning whether Weeks told him she saw defendant shoot Fluker, but abandoned this line of questioning. (*People v. Almo* (1984), 123 Ill. App. 3d 406.) Accordingly, we hold that the trial court's ruling which restricted Detective Rankin from testifying as to the omission was proper.

■ Next, defendant contends that the trial court erred in refusing to instruct the jury on voluntary manslaughter based on provocation. At the instruction conference, defense counsel sought to have two versions of the voluntary manslaughter instruction given to the jury. The trial judge refused to give the instruction on voluntary manslaughter based on provocation, but allowed the instruction on voluntary manslaughter based on reasonable belief in self-defense.

It is well settled that if there is evidence in the record which, if believed by the jury, would reduce a charge of murder to manslaughter, the manslaughter instruction must be given. (*People v. Sykes* (1977), 45 Ill. App. 3d 674, 359 N.E.2d 897.) However, if the evidence clearly demonstrates that the crime was murder, it would be error to give instructions on theories of voluntary manslaughter. *People v. Causey* (1978), 66 Ill. App. 3d 12, 383 N.E.2d 234.

■ Defendant argues that evidence was presented at trial which established that the defendant and the deceased exchanged blows shortly before the shooting. Citing *Sykes* for the proposition that mutual combat is sufficient to support a finding of serious provocation, defendant further argues that the evidence of the altercation justified the giving of the manslaughter based on provocation instruction. This argument overlooks the fact that sufficient time had lapsed between the alleged provocation and the homicide to permit the voice of reason to be heard. Under such circumstances, this court has held that the crime committed must be murder rather than manslaughter based on provocation. (*People v. Evans* (1980), 84 Ill. App. 3d 422, 405 N.E.2d 503.) In the instant case, defendant himself testified that

there was a 40-minute interval between the fight with the victim and the shooting. Moreover, when the trial court asked defendant if he was still angry after the fight, but before the time he shot the victim, he replied "No, sir. I wasn't." Clearly, defendant's admission indicates that he was not acting under the influence of a sudden and intense passion when he shot the victim. Accordingly, we find that the trial court properly determined that the record was devoid of evidence from which the jury could have found defendant guilty of voluntary manslaughter based on provocation. *People v. Causey* (1978), 66 Ill. App. 3d 12, 383 N.E.2d 234.

■ Finally, defendant contends that the trial court erred by refusing to question jurors during *voir dire* examination about their opinions on self-defense. Defense counsel sought the court's permission to ask three questions of the prospective jurors. These questions related to whether the jurors believed in the right of self-defense and whether they believed that under certain circumstances a person would have the right to use deadly force to prevent his own death. All three questions were refused.

The scope of the *voir dire* examination rests within the sound discretion of the trial judge. (*People v. Phillips* (1981), 99 Ill. App. 3d 362, 425 N.E.2d 1040.) Reasonable limitations on *voir dire* may not directly or indirectly concern matters of law or jury instructions. *People v. Phillips* (1981), 99 Ill. App. 3d 362, 425 N.E.2d 1040.

■ We find *People v. Bradley* (1981), 97 Ill. App. 3d 1100, 424 N.E.2d 33, controlling on this issue. In *Bradley*, the court held that it was not an abuse of the trial court's discretion to refuse to question jurors regarding their attitudes on self-defense. There, the trial judge refused the questions because he felt it would confuse the jury. Furthermore, the court determined that it would be better to instruct the jury on the law of self-defense at the close of the evidence. We believe the rationale under *Bradley* is applicable to the instant case. Accordingly, we find that it was not an abuse of discretion for the trial court to prohibit defense counsel from asking the jurors their opinions on self-defense.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

BUCKLEY, P.J., and GOLDBERG, J., concur.