THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONNIE RIDDLE, Defendant-Appellant.

First District (3rd Division)   No. 85—59

Opinion filed September 14, 1988.

Paul Alexander Rogers, of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Kenneth T. McCurry, and Scott Norris, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Defendant, Donnie Riddle, was convicted of murder and armed robbery and was sentenced to concurrent terms of 65 years and 30 years in the Illinois Department of Corrections. On appeal, defendant argues that the trial court erred in (1) refusing to instruct the jury concerning voluntary intoxication and involuntary manslaughter; (2) refusing to instruct the jury concerning withdrawal from accountability; (3) precluding the defense from showing that the police failed to investigate a known suspect; and (4) sentencing defendant to 65 years' imprisonment for murder because this sentence is unfairly disparate to the sentence received by his codefendant. We affirm.

Defendant, along with his codefendant, Tommie Lee Allen, was arrested and charged with the murder and armed robbery of Charles Jackson, an invalid. Defendant's case was severed from Allen's and defendant was tried before a jury.

At trial, the State presented Otis Hall as its occurrence witness. Hall testified that at 3:30 a.m. on August 24, 1983, he heard a voice crying out for help from a vacant lot. Hall looked out of his window and saw two black men come out of that vacant lot and then reenter the same carrying bricks and stones. Hall did not see the faces of these two men, but he testified as to their clothing. Hall stated that both of the men were wearing shirts; however, one was wearing cut-off pants and the other long pants.

Officer Patrick Gordon testified for the State. Gordon stated that on August 24, 1983, at approximately 10 a.m., he and his partner received a radio call to report to 3142 West 15th Street. When they arrived, defendant was present among a crowd of people. Defendant conversed with Gordon and told Gordon that he had been with Jackson and Allen and had seen Allen beat and rob Jackson. Defendant gave Gordon Allen's address. Allen was arrested and both Allen and defendant were taken to the police station.

While at the police station, defendant was interviewed by Detective Edward Rave. Rave's testimony at trial indicates that initially, defendant gave Rave the same account of what happened to Jackson as was given to Gordon. After interviewing Allen, Rave interviewed defendant again. At this interview, defendant admitted that he had helped Allen beat and rob Jackson. According to Rave, defendant was then placed under arrest.

After defendant was arrested, he signed a consent form for the police to search his home and gave the police a description of what he was wearing the morning of August 24, 1983, as well as where they could find those clothes in his home. When the police searched

defendant's home, they recovered a gray shirt and a pair of cut-off jeans. Defendant identified the shirt and cut-off pants as the clothes he had worn when Jackson was beaten and robbed.

Defendant was also questioned by Assistant State's Attorney Minelli. Minelli testified that defendant had given both an oral and a signed written statement. With respect to the written statement, defendant read it and made some corrections before signing it. The contents of both statements were essentially the same. According to the statements, defendant admitted to being with Allen and Jackson the night Jackson was killed and robbed. Allen had wheeled Jackson into the vacant lot, knocked him off his wheelchair, taken his money and cigarettes, and beaten him with rocks and his wheelchair. Defendant watched for the police; he also kicked Jackson once and dropped dirt on him.

When the State rested, defendant testified on his own behalf. Defendant denied any participation in the murder and robbery of Jackson. Defendant testified that he had spent that evening drinking beer and gin and "getting high" by smoking "happy stick" (a combination of marijuana and the animal tranquilizer PCP). When defendant later saw Jackson and Allen, Jackson offered defendant some more "happy stick" and he and Allen smoked it. As Allen pushed Jackson's wheelchair down the sidewalk, Allen informed defendant of his plans to rob and kill Jackson. Defendant testified that he informed Allen he wanted no part of that crime and walked away. When defendant returned to the vacant lot a few minutes later, he saw Allen beating Jackson. According to defendant, he "rushed" Allen but could not stop Allen from beating Jackson because defendant was "too high." Allen finally fled and defendant walked home. Defendant stated that he then summoned police, told them what happened and gave them Allen's address.

The defense attempted to call Detective Keane, Detective Rave's partner. Defense wanted to examine Keane regarding another alleged suspect in the crime who was never investigated. However, the trial court sustained the State's objection to this testimony.

Defendant's mother testified for the defense. Her testimony was essentially that her son had been hospitalized several days in 1980 for drug abuse. She stated that in spite of medical advice that defendant remain hospitalized, defendant insisted on being released.

Testimony as to defendant's chemical dependence was presented by defense and rebutted by the State. The testimony presented by the defense was that defendant suffered from "permanent and irreversible" brain damage "related to continuous ingestion of damaging

chemicals." However, the State's rebuttal expert testified that defendant exaggerated the extent of his intoxication at the time of the incident and that the medical records presented by defense illustrated only a temporary toxic psychosis rather than a permanent condition.

Subsequent to the close of evidence and closing arguments, the defense tendered instructions regarding voluntary intoxication, involuntary manslaughter, and withdrawal from a crime. The court refused these instructions and over defense's objection, instructed the jury as to accountability with respect to the armed robbery and murder. Following deliberations, the jury found defendant guilty of both murder and armed robbery. The court sentenced defendant to an extended term of 65 years' imprisonment for the murder and a concurrent term of 30 years for the armed robbery. Defendant's co-defendant, Allen, pleaded guilty and was sentenced to an extended term of 45 years for murder and a concurrent term of 30 years for the armed robbery.

■ Defendant first argues that the trial court erred in refusing to instruct the jury concerning voluntary intoxication and involuntary manslaughter. It is defendant's position that (1) the defense evidence established that defendant suffered from a chemical dependence which impaired his ability to reason and (2) defendant's "intoxication may have reduced his mental state to 'recklessness' but not absolved him altogether." Therefore, defendant was entitled to both a voluntary intoxication and an involuntary manslaughter instruction. We disagree.

To assert intoxication as a defense to a crime, a defendant must establish that his condition negated the existence of the requisite mental state which is an element of the crime and that his condition rendered him "wholly incapable of forming such intent." (*People v. Gomez* (1986), 141 Ill. App. 3d 935, 939, 491 N.E.2d 68, 71; *People v. Madej* (1985), 106 Ill. 2d 201, 216, 478 N.E.2d 392, 398.) A defendant is entitled to have an involuntary manslaughter instruction given to the jury when credible evidence in the record exists which would reduce murder to manslaughter. (*People v. Ward* (1984), 101 Ill. 2d 443, 451, 463 N.E.2d 696, 699.) However, such an instruction should not be given if there is no evidence to support a tendered involuntary manslaughter instruction in that the evidence clearly demonstrates that the crime was murder. *People v. Coleman* (1984), 124 Ill. App. 3d 285, 289, 464 N.E.2d 706, 709; *People v. Devin* (1982), 93 Ill. 2d 326, 335, 444 N.E.2d 102, 106.

■ In the instant case, the defense introduced expert testimony

that defendant had a history of chemical dependence and that defendant had suffered from irreversible and permanent brain damage as a result thereof. However, the State introduced evidence to the effect that defendant's account of his intoxication at the time of the offense was exaggerated. Contrary to the defense's expert, the State's expert in interpreting defendant's medical records surmised that defendant suffered from a temporary toxic psychosis rather than a permanent condition.

Based upon the testimony of defendant as well as the State's witnesses, defendant possessed a detailed memory of the events leading up to the robbery and murder. Defendant remembered that he had spent the evening drinking beer and "getting high." Defendant recounted the conversation in which the victim offered defendant some more "happy stick" and that defendant and Allen smoked it. Defendant further remembered the conversation in which Allen planned to kill the victim and defendant informed Allen that he wanted no part in the plan. Defendant remembers leaving and later returning to find Allen beating the victim. Defendant also was able to rush Allen "like a football player" in an attempt to stop Allen from beating the victim. According to the State's witnesses, defendant remembered acting as a look-out for the police, kicking the victim and throwing dirt in his face.

We conclude that the record does not suggest, as defendant urges, that defendant was so intoxicated that the requisite mental state for the crimes committed was negated by his intoxication. Nor does the record indicate that defendant's intoxication reduced his state of mind to that of recklessness and therefore guilty of involuntary manslaughter. To the contrary, the record evinces that defendant had a cognizance of the events immediately prior to the robbery and murder of the victim which belies any arguments that his power of reasoning had been suspended. Although defendant testified that he was intoxicated from alcohol and the chemical drug PCP, that fact alone is not enough to require the trial court to give an instruction on voluntary intoxication. (*People v. Williams* (1973), 14 Ill. App. 3d 789, 793, 303 N.E.2d 585, 588.) Accordingly, the trial court did not err in refusing to give the jury a voluntary intoxication instruction or an involuntary manslaughter instruction.

■ Defendant also argues that the trial court erred in not instructing the jury on withdrawal from accountability. We disagree.

To prove a defendant guilty of a crime based upon the theory of accountability, a defendant must (1) solicit, aid, abet, agree or attempt to aid another person in the planning or commission of the of-

fense; (2) participate in the occurrence either before or during the commission of the offense; and (3) participate with the concurrent, specific intent to promote or facilitate the commission of the offense. (*People v. McNeal* (1987), 160 Ill. App. 3d 796, 801, 513 N.E.2d 897, 901.) The statutory definition of withdrawal provides that a person is not accountable for the conduct of another when:

> "Before the commission of the offense, he terminates his effort to promote or facilitate such commission, and does one of the following: wholly deprives his prior efforts of effectiveness in such commission ***." Ill. Rev. Stat. 1985, ch. 38, par. 5—2(c)(3).

■ Here, by his own admissions to Assistant State's Attorney Minelli, defendant stated that (1) Allen informed defendant of his plans to rob and kill Jackson; (2) defendant accompanied Allen to the vacant lot where the crime occurred; (3) defendant kicked the victim in his face and threw dirt in his face; and (4) defendant served as a look-out while Allen carried out his plan. Beyond defendant's testimony that he attempted to rush Allen "like a football player," there is no evidence otherwise indicating that defendant engaged in any conduct to deprive his prior acts of effectiveness or that defendant had neutralized the effect of his prior conduct. Defendant's statement that he attempted to rush Allen "like a football player" was not sufficient evidence of withdrawal from the criminal activity to entitle him to an instruction. (*People v. Holloway* (1985), 131 Ill. App. 3d 290, 312, 475 N.E.2d 915, 931-32.) Accordingly, the trial court's refusal to give the tendered withdrawal instruction was proper.

■ Defendant next argues that the trial court erred in precluding the defense from showing that the police failed to investigate a known suspect. The trial court disallowed this testimony finding it to be out-of-court statements to the police and therefore hearsay. Defendant argues, however, that he did not wish to introduce this testimony to establish that another suspect existed but instead to establish the failure of the police to investigate a known suspect. We find this argument untenable.

Although evidence connecting a third person to an offense has been held admissible, such evidence is admissible only when it "closely link(s) the third person to the commission of the crime." Remote conduct of the third person not connected with the crime itself may not be shown. *People v. King* (1978), 61 Ill. App. 3d 49, 52, 377 N.E.2d 856, 859; *People v. Bryant* (1982), 105 Ill. App. 3d 285, 434 N.E.2d 316.

In the instant case, there was no evidence that a possible suspect

other than defendant existed. Throughout the statements made to the police and to the assistant State's Attorneys, no mention was ever made by defendant that another person was involved or that another suspect for that matter existed. Moreover, during his testimony, defendant never mentioned the presence of another person besides himself, Allen and the victim. Therefore, because there was no direct evidence linking another suspect to the crime, the trial court properly excluded any out-of-court statements made to the police regarding another possible suspect as hearsay.

■ Finally, defendant contends that the trial court erred in sentencing defendant to 65 years' imprisonment for murder because this sentence is unfairly disparate to the 45-year sentence received by his codefendant. We find this argument without merit.

The imposition of a sentence is a matter of judicial discretion, and absent an abuse of that discretion, the trial court's determination will not be disturbed on appeal. (*People v. Lipa* (1982), 109 Ill. App. 3d 610, 614, 440 N.E.2d 1062, 1065.) Moreover, a mere disparity in sentencing between codefendants, without more, does not warrant a reduction of the punishment imposed by the trial court. *People v. Gholston* (1984), 124 Ill. App. 3d 873, 896, 464 N.E.2d 1179, 1195.

A trial court's determination of a sentence is entitled to great deference and weight on appeal, because it is in a better position than a reviewing court to determine the proper sentence. The trial court has the opportunity to consider the subjective circumstances in each particular case, such as the defendant's (1) demeanor and character; (2) mentality; (3) abnormal or subnormal tendencies; and (4) natural inclination or aversion to commit crime. *People v. Reese* (1984), 121 Ill. App. 3d 977, 989, 460 N.E.2d 446, 454; *People v. Dukett* (1974), 56 Ill. 2d 432, 452, 308 N.E.2d 590, 601.

In the instant case, the Bureau of Identification report indicates that at the time of sentencing, defendant had been convicted twice for robbery in 1980 and 1981 and once for felony possession of controlled substance in 1981. Defendant was paroled from the Illinois State Penitentiary on June 11, 1982, and was arrested for the instant crime on August 24, 1983. Moreover, at the sentencing hearing, the trial court in considering "the nature and the circumstances of the offense and the character and background of each of the defendants in [the] case," found that defendant's "testimony was so contrary to much of the other evidence in the case that one must consider [that] factor as it might bear upon his prospects for rehabilitation." The court surmised that "Mr. Allen's prospects for rehabilitation are *** greater than that of defendant Riddle."

Thus, while disparity does exist between the sentences received by defendant and Allen, we cannot say that based upon the record the trial court abused its discretion in sentencing defendant.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA and FREEMAN, JJ., concur.