

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| Respondent, | ) | |
| | ) | No. 73946-8-I |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| GREGORY NOVOA, JR., | ) | |
| | ) | |
| Appellant. | ) | FILED: January 23, 2017 |
| | ) | |

Dwyer, J. – Gregory Novoa, Jr. appeals his convictions for residential burglary–domestic violence, violation of a no-contact order–domestic violence, and second degree malicious mischief. Novoa alleges three instances of prosecutorial misconduct, and he challenges the trial court's refusal to issue a supplemental jury instruction after the jury began deliberations. Because neither the trial court nor the prosecutor acted improperly and because Novoa waived his claims of error by failing to object at trial, we affirm his convictions.

I

In January 2015, Novoa and Juana Rodriguez de Reyes had been married for four years, but were living separately. Rodriguez lived in an apartment complex on South LaVenture Road in Mount Vernon, Washington. A

no-contact order required Novoa to stay at least 1,000 feet from Rodriguez, her residence, and her workplace.[1]

On January 16, 2015, Rodriguez awoke and heard Novoa screaming outside her bedroom window, wanting to come inside. She then saw Novoa outside, grabbing onto the slightly open window. Rodriguez was able to close and lock the window, and Novoa fell to the ground. Rodriguez testified that Novoa had never been in her apartment before. She was afraid and tried to call 911 but her telephone was not working.

A fence separates the apartment complex where Rodriguez lives on South LaVenture Road from a residential cul-de-sac on Carpenter Street. Officer Joel McCloud testified that around 6:30 a.m. on January 16, he was dispatched to a call of a burglary in progress on Carpenter Street. When he arrived, Lorenzo Garcia told him that someone was in Garcia's backyard. McCloud went to the backyard and heard voices on the other side of a 12-foot tall shed. He saw Novoa coming over the top of the building, yelling. McCloud repeatedly ordered Novoa to come down but Novoa did not comply. Concerned about a possible assault, McCloud used his taser on Novoa. It had no effect. Novoa jumped from the top of one car to another and then over a fence. McCloud estimated that Novoa jumped on a minimum of three to four cars on one side of the fence and two to four cars on the other.

Patrol Sergeant Walter Martinez arrived at the scene with additional officers who positioned themselves on both sides of the fence. Martinez heard

---

[1] The no-contact order was admitted into evidence at trial as exhibit 1, but it is not part of the appellate record. See RAP 9.6 (designating clerk's papers and exhibits for appeal).

McCloud order Novoa to get down, and he saw tasers or probes coming from Novoa's clothes. He saw Novoa jumping from car roof to car roof. When Novoa jumped closer to him, Martinez became afraid and discharged his taser. Again, the taser had no effect. Novoa continued to run across the tops of vehicles until Martinez was finally able to grab him. Martinez testified that he found the blinds from Rodriguez's apartment window on the ground outside.

Lorenzo Garcia testified that he had called 911 because his dogs were barking and he saw someone, subsequently identified as Novoa, jumping onto his cars and shed. Novoa damaged two of Garcia's cars, a Mercedes and a Malibu. Garcia obtained an estimate of $1,309 to repair the Malibu.

Antonio Martinez lived in the same apartment complex as Rodriguez. He testified that his Toyota Tacoma and Toyota Camry were damaged on the roof, hood, and windshield. He received estimates of $3,128.97 and $1,525.13 to repair the respective vehicles.

Novoa was arrested and taken to the hospital where he spoke with Officer Chantel Vandyk. He told Vandyk that he had been inside Rodriguez's apartment despite the no-contact order because he had no place else to stay.

At trial, Novoa testified that he had been inside Rodriguez's apartment with her permission and she had blocked his exit so he had to escape through a window. He claimed that he was trying to get away from dogs that he thought were in the apartment. When he fell, he said he was very frightened because the dogs were aggressively barking and snapping at him. Because he feared being mauled, Novoa sought "high ground" on the roof of a neighbor's garden shed and

-3-

then avoided the dogs by jumping on the tops of several cars. On cross-examination, Novoa admitted he did not have a key to Rodriguez's apartment. He admitted that he knew about the no-contact order.

Novoa was convicted of residential burglary–domestic violence, violation of a no-contact order–domestic violence, and one count of second degree malicious mischief. He appeals.

II

A

Novoa contends that the prosecutor engaged in misconduct during closing arguments when she stated:

> And if you are not satisfied in finding that [Novoa] was there with the intent to see [Rodriguez] and, therefore, commit the crime of violation of the no-contact order, he could have been there to commit any other number of crimes against her. Do you ever call 911 on someone who is coming over to have coffee? No.

Novoa claims that the prosecutor engaged in misconduct by urging the jury to convict him of residential burglary as long as Novoa intended to commit any crime inside the home instead of the specific crime of violation of the no-contact order. We believe that Novoa mischaracterizes the prosecutor's argument. There was no misconduct.

"In a prosecutorial misconduct claim, the defendant bears the burden of proving that the prosecutor's conduct was both improper and prejudicial." State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). Even if the prosecutor's statements were improper, "[i]f the defendant did not object at trial, the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so

flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." Emery, 174 Wn.2d at 760–61. Allegedly improper comments must be reviewed in the context of the prosecutor's entire argument, not in isolation. State v. Dhaliwal, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).

Considered in the context of her total argument, the prosecutor's comment was not improper. In closing, the prosecutor reviewed the elements of the crime of violation of the no-contact order before reviewing the elements of residential burglary. See RCW 9A.52.025(1) (residential burglary); RCW 26.50.110(1) (violation of no-contact order). She stated:

> The reason why I'm starting with discussions about the no-contact order is that in order for the crime of residential burglary to have been committed he had to have been there with the intent to commit a crime. The crime was violating a no-contact order.

When reviewing the elements of residential burglary, the prosecutor noted:

> The next element on your residential burglary instruction is that he was there to commit a crime. He had, in fact, committed a crime. He had committed the crime of a no-contact order violation. . . . If that element is proven we would already have decided that he violated the no-contact order. He knew what he was doing there.

Finally, in rebuttal, the prosecutor again stated that the residential burglary charge was predicated on the crime of violation of the no-contact order. "That's why I talked to you about the no-contact order to start with. He's unlawfully there. He's intending to commit a crime by being there. He's committing that."

Because the prosecutor repeatedly argued that the predicate crime for the residential burglary charge was violation of the no-contact order,[2] her isolated

---

[2] Although the prosecutor repeatedly stated that the predicate crime for the residential burglary charge was violation of the no-contact order, and the jury convicted Novoa of that crime, the

comment regarding other crimes was not misconduct. Moreover, because the jury convicted Novoa of violating the no-contact order, he cannot show that he was prejudiced by any allegedly improper suggestion that the jury could consider whether Novoa intended to commit a different crime inside the apartment.

Finally, even if the prosecutor's comment was improper, Novoa did not object and thus forfeited the right to raise this issue on appeal because a curative instruction could have easily remedied any potential prejudice. Emery, 174 Wn.2d at 760-61. See generally RAP 2.5(a) (arguments not raised in trial court generally will not be considered on appeal).

## B

Novoa objects to the prosecutor's statement that "[t]he requirement of malicious mischief is that he knowingly caused damage. I believe we have satisfied that burden beyond a reasonable doubt." Novoa contends that the prosecutor misstated the elements the State needed to prove to convict him of malicious mischief and lowered the burden of proof. He notes that malicious mischief requires the accused to "knowingly and maliciously" cause physical damage to another's property, and claims that the prosecutor's comment negated the need to prove that Novoa acted with malice. Br. of Appellant at 10-11 (quoting RCW 9A.48.080). We disagree.

---

prosecutor's comment that Novoa could have entered with the intent to commit any crime is consistent with the jury instruction on residential burglary and consistent with case law providing that the specific crime intended to be committed within is not an element of the charge of residential burglary. State v. Bergeron, 105 Wn.2d 1, 4, 711 P.2d 1000 (1985) ("The intent to commit a specific named crime inside the burglarized premises is not an 'element' of the crime of burglary . . . , [instead] [t]he intent required by our burglary statutes is simply the intent to commit any crime against a person or property inside the burglarized premises.").

Novoa has the burden to prove that the prosecutor's comment was improper and prejudicial. Emery, 174 Wn.2d at 756. He has failed to meet this burden.

First, when considered in the context of the prosecutor's closing argument as a whole, this isolated comment was not improper. See Dhaliwal, 150 Wn.2d at 578. In her direct closing argument, the prosecutor correctly reviewed the elements of malicious mischief including the need to prove that the act was both knowing and malicious:

> The second element on Instruction 18 is that this act was done knowingly and maliciously. . . . Malicious means with an evil intent, or wish, or design, to vex, annoy, or injure another person. . . . Garcia testified [Novoa] was not listening to law enforcement. He was jumping back and forth on the vehicle. . . . That certainly was an intent to annoy the property owner of that vehicle.

The prosecutor's allegedly improper statement was made to rebut defense counsel's argument during closing. Defense counsel argued that Novoa's conduct was not intentional because he did not even know the owners of the cars that were damaged and thus had no motive to intentionally and maliciously damage the vehicles:

> [I]ntent means if I come to your house and I steal your car, that's malicious. . . . If I know you, and I don't like you, I know that's your car, and I key it. That's malicious. Being tasered three times . . . , trying to follow an officer's instructions . . . going from one vehicle to the next, . . . that is not intentional. It's not malicious. . . . He did not know those people. He didn't know who owned those cars.

Defense counsel went on to argue:

> [T]his person cannot form malicious intent to damage the people's cars when he doesn't know these people. . . . Because he was not able to form an evil intent to damage those people's cars. . . . He

didn't know these people. Again, intentional, I intentionally keyed that car. I know that person, probably malicious.

To rebut defense counsel's argument that merely because Novoa did not know the owners of the cars, he could not have intended to maliciously damage them, the prosecutor stated:

> The malicious mischief count bears no relevance on if the defendant knew whose cars he was jumping on. It does not matter. There is no intent requirement that he intended to damage particular people's property. Again, refer to your jury instructions if there's any questions about what you are required to find. **The requirement of malicious mischief is that he knowingly caused damage. I believe we have satisfied that burden beyond a reasonable doubt.** In closing, I ask you to refer to your jury instructions if you have any questions.

(Emphasis added.)

A prosecuting attorney's allegedly improper remarks must also be considered "within the context of . . . the jury instructions." Dhaliwal, 150 Wn.2d at 578. While rebutting defense counsel's argument, the prosecutor repeatedly urged the jury to refer to the instructions if it had any questions, and those instructions properly stated the elements the State was required to prove in order to convict Novoa of malicious mischief. Moreover, the instructions informed the jurors that the law was contained therein and that they should disregard any comments by the lawyers that were unsupported by the evidence or the law. The jury is presumed to follow the court's instructions and disregard any improper comments. State v. Stenson, 132 Wn.2d 668, 730, 940 P.2d 1239 (1997). Novoa has failed to show that the jury failed to do so in this case. Considered in light of the prosecutor's entire closing, defense counsel's closing, and the jury instructions, the two sentences identified by Novoa were not improper.

Finally, even if the prosecutor's comments were improper, Novoa did not object and has thus waived this claim of error absent a showing that a curative instruction could not have cured any resulting prejudice. Emery, 174 Wn.2d at 761-62; see State v. Gentry, 125 Wn.2d 570, 596, 888 P.2d 1105 (1995) (if an error could have been neutralized by a curative instruction but the defendant did not object or request such an instruction, the defendant waives such error). Novoa cannot make this showing because the trial court could have easily cured any possible prejudice by reiterating the elements of malicious mischief.

C

During voir dire, the prosecutor questioned some jurors as to their impression about whether being under the influence of illegal drugs could impact a person's behavior. Defense counsel objected but the objection was overruled. After jury selection was complete, the trial court granted Novoa's motion in limine to exclude any mention of his admission to having used methamphetamine. Because the trial court granted the motion in limine, Novoa claims the prosecutor engaged in misconduct by questioning the jury about the effect of drug consumption on a person's behavior. We disagree.

"The scope of voir dire is within the trial court's sound discretion." State v. Yates, 161 Wn.2d 714, 747, 168 P.3d 359 (2007). The trial court's decision will "not be disturbed on appeal '[a]bsent . . . a showing that the accused's rights have been substantially prejudiced thereby.'" Yates, 161 Wn.2d at 747 (first alteration in original) (quoting State v. Frederiksen, 40 Wn. App. 749, 752-53, 700 P.2d 369 (1985)).

-9-

Jury selection and voir dire occurred before the trial court ruled on Novoa's motion in limine. Thus, at the time of voir dire, the prosecutor had no way of knowing whether Novoa's drug use might be relevant to his claims of being unable to remember the events of January 16, 2015, being in fear of Garcia's dogs, or thinking that dogs were inside of Rodriguez's apartment. Because Novoa's motion in limine did not become an order until granted by the trial court, the prosecutor's questions during voir dire were within the scope of matters that might be relevant at trial. See generally State v. Austin, 34 Wn. App. 625, 627-28, 662 P.2d 872 (1983) (recognizing that the trial court has the discretion to decide when to rule upon a motion in limine).

Finally, even if the questions were improper, Novoa has failed to show that his rights to a fair jury were "substantially prejudiced thereby." Frederiksen, 40 Wn. App. at 753. Because no evidence of drug use by Novoa or anyone else was introduced at trial, the jury had no way of knowing whether the State's voir dire questions pertained to Novoa, to another witness who might have been under the influence of illegal drugs, or to no one associated with the trial at all.

D

During deliberations, the jury sent out a question: "Do all violation of no-contact orders include a residential burglary charge if violator enters their dwelling [and] [i]s that why count 1 residential burglary is included in this?" After obtaining the agreement of the prosecutor and defense counsel, the trial court answered the question by referring the jury back to their instructions as given.

-10-

Novoa claims that the trial court should have responded to the jury's question by issuing another instruction to "clarify its misconception and to ameliorate the misconduct of the prosecutor." Br. of Appellant at 16. This claim is unavailing.

We review a trial court's decision as to whether to give further instruction in response to a request from a deliberating jury for abuse of discretion. State v. Brown, 132 Wn.2d 529, 612, 940 P.2d 546 (1997); State v. Ng, 110 Wn.2d 32, 42, 750 P.2d 632 (1988). In general, the trial court does not abuse its discretion when it refers the jury to the instructions already given that correctly state the law. Ng, 110 Wn.2d at 42-44. See generally State v. Clausing, 147 Wn.2d 620, 626, 56 P.3d 550 (2002) ("Jury instructions are sufficient if they are supported by substantial evidence, allow the parties to argue their theories of the case, and when read as a whole properly inform the jury of the applicable law.").

As previously discussed, the prosecutor's closing argument and the jury instructions clearly set out the elements of residential burglary, violation of the no-contact order, and malicious mischief. Therefore, Novoa is incorrect that further instruction was needed to ameliorate the prosecutor's misconduct. Moreover, the jury's decision to convict Novoa of violating the no-contact order negates his contention that the jury was confused as to the predicate crime associated with the residential burglary charge. No additional instruction was necessary. See generally Ng, 110 Wn.2d at 43 (a question from the jury "does not create an inference that the entire jury was confused").

Finally, Novoa has waived any challenge regarding the trial court's response to the jury question. Novoa did not object to the jury instructions given nor to the trial court's response to the jury question, and he failed to offer any substitute or additional instructions at trial or even on appeal.

Novoa's failure to object or offer alternative instructions precludes him from raising this issue on appeal unless he can show "manifest error affecting a constitutional right." RAP 2.5(a)(3); State v. Scott, 110 Wn.2d 682, 686, 757 P.2d 492 (1988) (claimed errors in jury instructions that were not raised in the trial court will not be entertained on appeal except for "certain instructional errors that are of constitutional magnitude"). Supplemental instructions are governed by the same rules as initial instructions. See generally State v. Becklin, 163 Wn.2d 519, 529-30, 182 P.3d 944 (2008) (analyzing supplemental instruction given in response to jury question to determine whether it accurately reflected the law and sufficiently apprized the jury on that law). Because the jury was properly instructed as to the elements of the crimes charged, Novoa has failed to raise an issue of constitutional magnitude. State v. Stearns, 119 Wn.2d 247, 250, 830 P.2d 355 (1992) (when the instructions properly inform the jury of the elements of the charged crime, any alleged errors in the instructions are not of constitutional magnitude); see State v. Garbaccio, 151 Wn. App. 716, 736, 214 P.3d 168 (2009) (when trial court properly instructs the jury on the elements of all the offenses charged, any enhanced instructions are not constitutionally required). Therefore, appellate review is precluded. RAP 2.5(a); Scott, 110 Wn.2d at 686.

Affirmed.

We concur: