[No. 14124-4-I. Division One. May 28, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. GEORGE FRED FREDERIKSEN, *Appellant.*

---

*Julie A. Kesler* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *H. Duane Evans, Deputy,* for respondent.

SWANSON, J.—George F. Frederiksen appeals his jury conviction of second degree assault while armed with a deadly weapon and a firearm. He claims that the trial court erred in disallowing voir dire questions regarding veniremen's attitude toward self–defense, that the State did not prove beyond a reasonable doubt the absence of self–defense, and that the jury instructions improperly placed upon the defendant the burden of proving self–defense.

On the evening of October 9, 1983, Wayne Nelson and three friends were in Seattle's China Chef Restaurant lounge. Frederiksen sat alone at a separate table but on the same bench as Nelson. According to Nelson, when Frederiksen slid down the bench to sit next to him and later, after having moved back to his own table, when Frederiksen asked one of Nelson's friends to dance, Nelson asked him to leave them alone. After the second time, Frederiksen asked if Nelson wanted to "settle this" outside. Nelson replied that he had no reason to do so.

After Frederiksen finished his drink, stood up and again asked Nelson if he wanted to settle things outside, Frederiksen swung at Nelson, hitting him on the hand and on the side of the head. Yelling an obscenity at Nelson, he ran out of the restaurant. Nelson ran after Frederiksen, who

looked back as he was going outside. When Nelson went out the door, he saw Frederiksen at his right 4 to 5 feet away, facing him in the dark. The defendant was reaching to get something out of his coat pocket. Nelson grabbed him by the shoulder and forearm and was shot during the ensuing struggle. Nelson's friend took the gun from Frederiksen and restrained him until the police arrived.

Frederiksen admitted swinging at Nelson but denied asking him to step outside. He testified that after swinging at Nelson, he immediately realized his mistake and hurriedly left the lounge. When he saw Nelson running after him, he tried to get his gun out to scare Nelson away. However, before he could do so, Nelson had grabbed his neck, cutting off his air supply since he had had a tracheotomy. According to Frederiksen, he was on the verge of blacking out when he pulled the trigger. He claimed that he was still trying to run away when Nelson caught up with him.

Frederiksen was convicted by a jury of second degree assault while armed with a deadly weapon and a firearm and was sentenced to a 10–year prison term.

At trial during voir dire of a prospective juror, the defense counsel asked a question regarding self–defense, with the following court response:

Q Okay. If the judge were to instruct you that a person has a right to self–defense, would you be able to follow that instruction?

THE COURT: Counsel, I think it's appropriate that we not have any discussion of any particular issues in the case other than what we've already talked about. Ask another question, Mr. Goldsmith.

The defendant contends that the trial court erred in refusing to permit questions as to veniremen's attitude toward self–defense.

CrR 6.4(b) provides in pertinent part:

(b) **Voir Dire.** A voir dire examination shall be conducted for the purpose of discovering any basis for challenge for cause and for the purpose of gaining knowledge to enable an intelligent exercise of peremptory chal-

> lenges. . . . The judge and counsel may . . . ask the prospective jurors questions touching their qualifications to serve as jurors in the case, subject to the supervision of the court as appropriate to the facts of the case.

Thus to gain information that may lead to a challenge for cause or a peremptory challenge, counsel may ask juror qualification questions, subject to the court's supervision.

The voir dire scope should be coextensive with its purpose, which

> is to enable the parties to learn the state of mind of the prospective jurors, so that they can know whether or not any of them may be subject to a challenge for cause, and determine the advisability of interposing their peremptory challenges.

*State v. Laureano,* 101 Wn.2d 745, 758, 682 P.2d 889 (1984) (quoting *State v. Tharp,* 42 Wn.2d 494, 499–500, 256 P.2d 482 (1953)). Moreover,

> it is not "a function of the [voir dire] examination . . . to educate the jury panel to the particular facts of the case, to compel the jurors to commit themselves to vote a particular way, to prejudice the jury for or against a particular party, to argue the case, to indoctrinate the jury, or to instruct the jury in matters of law."

(Citation omitted.) *People v. Williams,* 29 Cal. 3d 392, 408, 628 P.2d 869, 174 Cal. Rptr. 317, 325 (1981).

■ "[T]he defendant should be permitted to examine prospective jurors carefully, 'and to an extent which will afford him every reasonable protection.'" (Citation omitted.) *Laureano, supra.* However, the limits and extent of voir dire examination fall within the trial court's discretion. *Laureano,* at 757. The trial court's exercise of discretion is limited only by the need to assure a fair trial by an impartial jury. *United States v. Jones,* 722 F.2d 528, 529 (9th Cir. 1983).

The refusal to permit specific questions is not reversible error absent an abuse of discretion, which will be found only if the questioning is not reasonably sufficient to test the jury for bias or partiality. *Jones.* Absent an abuse of discretion and a showing that the accused's rights have

been substantially prejudiced thereby, the trial judge's ruling as to the scope and content of voir dire will not be disturbed on appeal. *United States v. Robinson,* 475 F.2d 376, 380 (D.C. Cir. 1973); *Haslam v. United States,* 431 F.2d 362 (9th Cir. 1970), *aff'd on rehearing,* 437 F.2d 955, *cert. denied,* 402 U.S. 976 (1971); *see Williams,* 174 Cal. Rptr. at 327–28.

The trial court is vested with discretion (1) to see that the voir dire is effective in obtaining an impartial jury and (2) to see that this result is obtained with reasonable expedition. Therefore, the trial court may refuse to permit questions that are only speculatively related to prejudice. *Jones.*

Three situations require specific voir dire questions because of a real possibility of prejudice: (1) when the case carries racial overtones; (2) when the case involves other matters (*e.g.,* the insanity defense) concerning which either the local community or the population at large is commonly known to harbor strong feelings that may stop short of presumptive bias in law yet significantly skew deliberations in fact; and (3) when the case involves other forms of bias and distorting influence which have become evident through experience with juries (*e.g.,* the tendency to overvalue official government agents' testimony). *Jones,* at 529–30 (citing *Robinson,* at 381); *see Williams,* 174 Cal. Rptr. at 325.

█ The defendant claims that the present case, involving a self–defense claim, falls into the second type of situation because firearms use is controversial, as is the State's having the burden of disproving self–defense. However, the *Robinson* court, at page 381, concluded that self–defense in general did not fall within any of the three classes raising a real possibility of bias. *See People v. Coleman,* 124 Ill. App. 3d 285, 464 N.E.2d 706, 709–10 (1984) (disallowing self–defense voir dire questions not abuse of discretion).

Moreover, although the defendant claims that self–defense–related questions were necessary to unearth bias because firearms use is controversial, voir dire questions

regarding firearms were asked. The trial court itself asked all of the veniremen questions regarding any experience with firearms, participation in pro– or anti–gun ownership organizations, or strong feelings as to gun ownership that might compromise their ability to be fair. Thus the record indicates a searching inquiry as to the veniremen's attitude toward firearms use.

As for the defendant's contention that self–defense questions were necessary because of possible jury resistance to the State's having the burden to disprove self–defense, the record on review does not indicate that defense counsel sought to ask questions about the State's burden of proof as to self–defense.

The trial court disallowed a general question as to the veniremen's ability to follow a right to self–defense instruction. A "litigant's method of challenging a trial court's ruling on permissible voir dire questions should be specific." *State v. Brown*, 547 S.W.2d 797, 800 (Mo. 1977). Here defense counsel objected as follows to the court's ruling that self–defense questions were inappropriate:

> Mr. Goldsmith: I have a problem with the Court's failure to allow me to inquire as to their *predisposition toward general self–defense*, because I think that there may be some quarrel with that among some people, and I'm afraid that if I can't inquire into that, I would be unable to detect people *prejudiced against that defense*, and thus could possibly be stricken for cause because that is likely to be a defense, and an instruction that they will get which they will be required to follow.
>
> . . .
>
> Mr. Goldsmith: So I would object to my inability to inquire into that area.

(Italics ours.)

The following colloquy then ensued:

> The Court: . . . I don't believe that's an appropriate inquiry. The jurors have been reminded of their responsibility to follow the law regardless of what they believe it is or ought to be. I think that type of questioning borders too closely in my judgment on asking them to speculate about a set of circumstances that they've not yet

received. And I also think that the term "self–defense" may have a street or colloquial definition that is different than what the Court might determine, and I simply think we need to avoid that in the jury selection process. . . .

MR. GOLDSMITH: . . . Am I not allowed to ask any questions whatsoever about the concept of self–defense, or about the way self–defense is defined, such that it's defined from the point of view of the person defending himself?

THE COURT: That's exactly right, Mr. Goldsmith.

Here the court's blanket prohibition as to self–defense voir dire questions was unduly broad. Nevertheless, defense counsel's objection to the court's ruling was stated in terms of his inability to ask general questions regarding self–defense, not a specific question regarding the State's having the burden of proof on the issue. Defense counsel made no offer of proof to show that questions regarding the State's burden of proof on self–defense might unearth prejudice and to show that he did not intend to indoctrinate prospective jurors or to engage in a vague, speculative inquiry to see if he could unearth something prejudicial.

The present case is thus unlike *State v. Brown,* at 800,[1] in which the Missouri Supreme Court stated that

> it is clear defense counsel made known to the trial court he wanted to learn if the veniremen's minds were open or closed to the principle that the burden of proof would be on the state to disprove self–defense. This was vital to the defendant's right to have an unbiased jury. The trial court erred in barring defendant from exercising this right.

*Cf. Williams,* 174 Cal. Rptr. at 327 (disallowing voir dire question regarding using force in self–defense when retreat available was reversible error). Because defense counsel said nothing about questions regarding the State's having the burden of disproving self–defense, the trial court's rul-

---

[1]The Missouri Supreme Court stated that in light of the "liberal latitude" permitted in voir dire examinations under Missouri law, "a defendant has the right to discover whether prospective jurors have fixed opinions against applying the court–declared law of self–defense." *State v. Brown,* 547 S.W.2d 797, 799 (Mo. 1977).

ing here was based upon a proposed inquiry into attitude toward self–defense in general.

Voir dire as to self–defense in general does not fall within one of the three classes raising a real possibility of bias so that specific questions are required. *Robinson,* at 381. Thus the defendant bore the burden of showing a reasonable possibility of prejudice, *i.e.,* that the proposed question was "reasonably calculated to discover an actual and likely source of prejudice, rather than pursue a speculative will–o–the–wisp." *Jones,* at 530 (quoting *Robinson*).

Here no showing was made that prejudice against a self–defense claim was likely to be encountered in the community from which the veniremen were drawn.[2] *Robinson.* In the absence of such a showing, the trial court did not abuse its discretion in disallowing questions on the subject.[3] *Jones.*

■ The defendant's next contention that the State failed to prove beyond a reasonable doubt the absence of self–defense lacks merit. The test for reviewing a challenge to the sufficiency of the evidence to support a criminal conviction is

> whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

---

[2]In fact, as noted by the court in *United States v. Robinson,* 475 F.2d 376, 381 n.10 (D.C. Cir. 1973), a social research study of jurors' behavior indicated that the typical jury tends to take a rather charitable view of a self–defense claim and to interpret favorably toward the defendant the evidence adduced, H. Kalven & H. Zeisel, *The American Jury* 221–41, 407–08 (1966).

[3]The record reveals that the voir dire questions asked were thorough and searching. The court inquired of all of the veniremen as to their attitude toward and experience with firearms, any participation in pro– or anti–gun ownership organizations, and any experiences as victims of or witnesses to a crime that might affect their ability to be fair to either party. Counsel for both parties were permitted to ask further questions of those veniremen responding affirmatively to the court's questions as well as to ask other pertinent questions to discover possible prejudice.

could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia,* 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781, *reh'g denied,* 444 U.S. 890 (1979), *quoted in State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980). Here the record indicates that the jury might well have found beyond a reasonable doubt that the defendant did not act in self–defense.

The defendant's contention that the court's instructions presumptively shifted the burden of proving self–defense to the defendant similarly lacks merit. "[T]he test is whether the jury was informed, or could understand from the instructions as a whole, that the State bears the burden of proof on self–defense." *State v. Acosta,* 101 Wn.2d 612, 622, 683 P.2d 1069 (1984). Here instructions 2 and 7[4] clearly place the burden of proving the absence of self–defense upon the State, as required in a second degree assault prosecution. *Acosta,* at 619. Moreover, the appellant's brief, at page 6, acknowledges that the jury was properly instructed that the State had to prove the absence of self–defense beyond a reasonable doubt.

The judgment is affirmed.

SCHOLFIELD, A.C.J., concurs.

---

[4]Instruction 2 provides in part:

"The defendant has entered a plea of not guilty. That plea puts in issue every element of the crime charged. The plaintiff has the burden of proving each element of the crime beyond a reasonable doubt."

Instruction 7 states in part:

"To convict the defendant of the crime of assault in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

"(1) That on or about the 9th day of October, 1983, George Fredericksen [*sic*] knowingly:

"(a) assaulted Wayne Nelson with a weapon or other instrument or thing likely to produce bodily harm; or

"(b) inflicted grievous bodily harm upon Wayne Nelson with or without a weapon;

"(2) That George Fredericksen [*sic*] was not acting in self defense; and

"(3) That the acts occurred in King County, Washington."

WILLIAMS, J. (concurring)—The question "If the judge were to instruct you that a person has a right to self–defense, would you be able to follow that instruction?" cannot be appropriately answered in the abstract, the veniremen not knowing the instruction's context. The court properly shut off an answer. Defendant's subsequent argument that thereby the court would not allow him "to inquire as to their [veniremen] predisposition toward general self–defense" and that he could not "detect people prejudiced against that defense" is not supported.

I therefore join in affirming the judgment.

Review denied by Supreme Court September 19, 1985.