[No. 21984-4-III.   Division Three.   June 22, 2004.]

AMBER D. LOPEZ-STAYER, *Appellant*, v. KEVIN S. PITTS, *Respondent*.

*James E. Baker* (of *Miracle, Pruzan, Pruzan & Baker*) and *William D. Pickett*, for appellant.

*Mary H. Spillane* (of *William Kastner & Gibbs*) and *Dennis L. Fluegge* (of *Meyer, Fluegge & Tenney, P.S.*), for respondent.

SWEENEY, J. — The scope and extent of voir dire is vested in the discretion of the trial judge conducting the trial. *State v. Frederiksen*, 40 Wn. App. 749, 752-53, 700 P.2d 369 (1985). Here, the trial judge refused to let the plaintiff's lawyer use the word "insurance" in the conduct of his voir dire of a jury. The judge did permit extensive inquiry into the jurors' attitudes on medical malpractice litigation, the medical malpractice "crisis," claims, and frivolous lawsuits. We conclude that the limitations imposed by the trial judge fell well within his discretionary authority. And we therefore affirm the judgment and the court's order denying a motion for a new trial.

## FACTS

Angela P. Stayer,[1] as guardian ad litem for her daughter, Amber D. Lopez-Stayer, sued Dr. Kevin Pitts. She claims that he negligently managed Amber's delivery. Amber's shoulder stuck behind her mother's pubic bone. This resulted in a condition known as shoulder dystocia. Ms. Stayer argued that Amber suffered permanent injury to her nerves when Dr. Pitts elected to continue with a vaginal delivery. Dr. Barbara Bates, Ms. Stayer's family practice physician, referred the case to Dr. Pitts for a Cesarean section after she identified the shoulder dystocia problem and determined that a vaginal delivery could not be safely performed.

Dr. Pitts moved to exclude mention of liability insurance coverage at trial. Ms. Stayer wanted to question the jury on the malpractice insurance "crisis" and related publicity.

The court permitted broad inquiry into "claims," "lawsuits," and the medical malpractice "crisis" in general, but refused a specific discussion of insurance:

> Well, the Court is going to preclude reference to insurance. I looked over the [jury] questionnaire and I don't see that in the questionnaire insurance is referenced at all. Malpractice is referenced. Malpractice crisis is referenced but not insurance, unless I've missed something. The Court is not going to allow inquiry either in voir dire or during the course of the trial about insurance. It would make no sense to allow it in voir dire and then not allow it during the trial. So I think you can phrase your questions, Mr. Baker[2]—I have confidence in you—in the spirit of the questionnaire which doesn't talk about insurance but does talk about problems in the industry, if we can refer to medicine as an industry.

Report of Proceedings (RP) at 51.

Prospective jurors completed a questionnaire as part of the voir dire process. It included the following statements:

---

[1] David M. Bohr ultimately replaced Ms. Stayer as guardian ad litem.

[2] One of the attorneys for Ms. Stayer.

a. It is worse to award too little than too much to an injured party in a lawsuit.

   *Agree     Disagree     No Opinion*

b. A bad outcome usually means malpractice has been committed.

   *Agree     Disagree     No Opinion*

c. Lawsuit damages are often the only way to make doctors accountable.

   *Agree     Disagree     No Opinion*

d. Malpractice lawsuits help "police" the medical profession and keep it honest.

   *Agree     Disagree     No Opinion*

Clerk's Papers (CP) at 336. And it included the following questions:

13. Have you seen or heard any advertisements in the last six months criticizing persons who use the judicial system to get money as compensation for personal injuries or damages caused by another? If so, what have you heard or seen?

14. Does anything concern you about medical negligence lawsuits in which money damages are being sought? If so, what is your concern?

15. What are your feelings about people who file lawsuits for money damages for personal injuries?

16. Do you feel that lawsuits are filed too frequently? If so, please state why.

17. What concerns, if any, do you have about awarding money as damages to an injured person?

18. Without having heard any of the evidence or law in this case, do you have a limit of the amount of money you could award as damages to an injured person? If so, what is the limit?

19. This is a medical negligence case. If the jury in this case were to award money damages, would you feel it would have some economic effect on you personally?

    [ ] YES     [ ] NO     [ ] MAYBE

    If so, in what way?

20. Do you believe a person should be allowed to sue his or her medical doctor? Why or why not?

21. Based on what you have heard or read about the court system, do you believe jury verdicts overcompensate, undercompensate or adequately compensate medical negligence claimants? Please explain the basis of your belief.

CP at 337-38. Ms. Stayer renewed her request to discuss malpractice insurance during voir dire based on certain of the venire's responses to the questionnaire. She noted that 5 of the first 18 jurors questioned volunteered some concern about the effect of malpractice suits on medical malpractice insurance.

The court responded:

Mr. Baker, my question is this. Why do you have to reference the word "insurance" to inquire about that of this jury? Can't you just reference the word "claims," "lawsuits" or anything else and still get to the same place? I say that because whether or not Dr. Pitts is paying this out of his pocket and, therefore, he has to charge more money per patient or his malpractice, if I can use that word, rates go up because of insurance and he has to pay that out of his pocket, I mean, the difference is the same in my mind.

RP at 63.

The trial judge again prohibited reference to insurance:

I think the Court's first responsibility here is to make sure that both sides have a fair trial, but right behind that is for the Court to try to follow the law as best as the Court can with human frailties, my frailties. My perception of the law is still that the Court should not permit references to insurance, and there are some policy reasons behind that, not just in this particular instance that costs of care may be going up, in fact may be limiting ability of certain people to access medical care in certain parts of the states or certain states—we've all heard and read about those things—but there are other policy reasons, I think, why the word "insurance," at least, should not be discussed before a jury either by the Court or by counsel, such

as that well, obviously Mr. Kreutz and Mr. Fluegge[3] are here because they're hired by the insurance company, which has nothing to do with this case.

. . . .

And that any award, should one be made here based on the jury's finding, is not going to be paid specifically by Dr. Pitts and/or his wife but, rather, by an insurance company. Those are places we, I don't think, are to go, and so I'm going to, you know, affirm my prior ruling that counsel should not refer to insurance. Mr. Fluegge is right. Certainly, the jurors may talk about insurance. That issue may come up from their mouths and I have no way to control that, but I do have control over whether counsel talk about insurance. And in this concept of a fair trial—and I certainly understand the importance of selecting a jury that you folks think will be a fair jury, but I think you can get there without saying the word "insurance." I'm convinced that you and Mr. Pickett[4] can, without any doubt in my mind at all.

RP at 65-66.

The jury returned a verdict in favor of Dr. Pitts.

Ms. Stayer moved for a new trial on a number of grounds, including the court's failure to allow her to discuss insurance. The court denied the motion.

## DISCUSSION

### LIMITATION ON VOIR DIRE—ABUSE OF DISCRETION

█ Our system vests a trial judge with considerable latitude in shaping the limits and extent of voir dire. *Murray v. Mossman*, 52 Wn.2d 885, 887, 329 P.2d 1089 (1958). This trial judge abused his discretion only if his decision was based on untenable grounds or untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Voir dire is not a topic that lends itself to appellate review because of the nuances and subtleties presented by each

---

[3] Attorneys for Dr. Pitts.

[4] One of the attorneys for Ms. Stayer.

jury case. *State v. Davis*, 141 Wn.2d 798, 825-26, 10 P.3d 977 (2000). It is for these reasons that "[t]he trial court is vested with discretion (1) to see that the voir dire is effective in obtaining an impartial jury and (2) to see that this result is obtained with reasonable expedition." *Frederiksen*, 40 Wn. App. at 753. The ultimate test here is not whether the trial judge should or should not have allowed any single question or even line of questioning. The test is whether the court permitted the plaintiff here to ferret out bias and partiality. *Id.* at 752. The primary purpose of voir dire is to give a litigant an opportunity to explore the potential jurors' attitudes in order to determine whether the jury should be challenged. *Id.*

Ms. Stayer's specific assignment of error here is that the trial judge based his ruling on an erroneous understanding of the law—that ER 411[5] did not permit the introduction into evidence of liability insurance. And a discretionary ruling based on error of law is an abuse of discretion. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 339, 858 P.2d 1054 (1993). We disagree with her assertion for two reasons.

First, the trial judge's legal premise for refusing the general discussion of insurance was not limited to the admissibility of evidence of liability insurance. He expressed concern over the suit degenerating into a contest of whether Dr. Pitts was or was not insured. RP at 65, 66. And he pressed Ms. Stayer's counsel for some reason why voir dire on the topics of "claims," "frivolous lawsuits," and the medical malpractice "crisis" generally would not adequately address his justifiable concerns. RP at 63.

And, second, we would conclude that even if the court's view of the law of evidence on this point was overly restrictive, the court permitted ample inquiry on this topic. Again, the terms "claims," "frivolous lawsuits," and medical malpractice "crisis" were liberally tossed about during the voir dire process here. It is then speculation to suggest that

---

[5] ER 411 restricts evidence of a defendant's insurance coverage or the lack of such coverage as proof of negligence or other wrongdoing.

the addition of the word "insurance" would have yielded more information upon which the lawyers could have evaluated and then challenged specific jurors.

Ms. Stayer also faced formidable obstacles in this case. A significant number of the jurors or prospective jurors were connected in some way with the Wenatchee Valley Clinic, or Dr. Pitts, or the Wenatchee medical community. And the jury panel (as part of the general public) had been inundated with publicity about the medical malpractice crisis and its effect on the health care industry, including recent comments by the President of the United States in his State of the Union Address.

But the heart of the question before us is whether the court's refusal to allow the use of the word "insurance" so impaired the ability of Ms. Stayer to ferret out juror bias or partiality that a new trial is required. Or said another way, the issue is whether in the context of this specific case and given these specific parties, Ms. Stayer's lawyers were given sufficient latitude. And we conclude that the trial judge appropriately exercised his discretion to assure that this was done.

In *Kozlowski v. Rush*, the trial court refused to allow voir dire on the subject of the "medical malpractice crisis" or "insurance crisis." *Kozlowski v. Rush*, 121 Idaho 825, 830-31, 828 P.2d 854 (1992). The Idaho Supreme Court held that a party may properly make a good faith inquiry into whether the venire have been exposed to media accounts concerning allegations about the effect of jury awards on insurance costs and the "medical malpractice crisis" in general. There, the court also noted the trial judge's misconception that insurance could not be mentioned in voir dire. *Id.* at 832. In *Kozlowski*, however, the primary issue on appeal was the admissibility of certain expert testimony. The court remanded the case on this primary issue. It also instructed that on retrial the trial court should allow voir dire about the effect of insurance industry publicity on prospective jurors. *Id.* at 834-35. Here, the court allowed Ms. Stayer to extensively explore the jury's thoughts and

feelings on "medical malpractice crisis" indoctrination. The addition of the word "insurance" would not have significantly added to or focused that discussion.

Ultimately the issues before this jury were liability (whether Dr. Pitts' management of this delivery fell below the standard of care for physicians practicing in his discipline) and damages (the extent to which Amber Lopez-Stayer was injured). Ms. Stayer's skillful counsel amply explored whether costs visited upon the public through medical malpractice claims would influence the jury's decision. The inquiry about medical malpractice insurance may have been indirect because of the court's ruling. But it was nonetheless effective in uncovering the kind of bias which would prompt preemptory challenges which were exercised. The judge's ruling in this case reflects a carefully balanced line between allowing Ms. Stayer's counsel to discover the bias which may be engendered by publicity by insurance companies and the right that Dr. Pitts had to try his case based upon his medical judgment rather than his financial wherewithal or that of his insurance carrier. That is not an abuse of discretion.

We affirm the judgment of the trial court.

KATO, C.J., and KURTZ, J., concur.