IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50006-0-II |
| Respondent, | |
| v. | |
| LUIS JOHN HORAL, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Luis John Horal appeals his second degree assault conviction, arguing he was denied a fair trial because the trial court limited voir dire to 20 minutes per side. Horal further alleges prosecutorial misconduct and ineffective assistance of counsel. We affirm.

FACTS

The State charged Horal with second degree assault following an altercation between Horal and his father's friend, Patrick Veysey. While visiting Horal's father, Veysey commented that Horal needed to move out and get a job, which Horal overheard while he was outside his father's home. Veysey claims Horal then came inside in a rage, threw Veysey into a wall, and pushed him onto the front porch, resulting in Veysey fracturing his arm.

Before beginning jury voir dire, the trial court informed the parties, "Generally I'll give counsel 20 minutes per side for opening round of voir dire with ten minutes of rebuttal. Those are guidelines, so if we're getting into the weeds on something, those can be expanded, if needed, on

request." 1 Verbatim Report of Proceedings (VRP) (January 23, 2017) at 5. Defense counsel did not object. Although the State twice sought, and was granted, additional time for questioning, defense counsel did not request additional time during voir dire, and did not use the allotted 10 minutes for rebuttal questions. Defense counsel also declined the trial court's offer of additional time to question the venire panel after the State was granted additional time for questioning.

During the trial, Horal's father and Veysey testified. Horal's father corroborated Veysey's testimony that Horal pushed Veysey into a wall and then out the front door, causing him to fall.

Horal, however, testified that he calmly entered the home and escorted Veysey to the door, at which point Veysey tripped and fell on the front porch. Horal also testified that Veysey pushed his finger into Horal's chest and the two chest bumped before Horal asked Veysey to leave. The prosecutor asked Horal if his testimony matched what Horal told the investigating officer. Horal replied, "That's correct." 2 VRP (January 24, 2017) at 245. When asked if he left out the part about the finger pointing, Horal replied, "Possibly. I don't remember." 2 VRP (January 24, 2017) at 246.

Horal's girlfriend, Sara Baker, originally told the investigating officer that she was outside and did not witness the encounter. But at trial, Baker testified that Horal asked Veysey to leave and opened the front door for him, at which point Veysey fell through the front doorway on his own, got up, and remarked that he had broken his arm.

During closing arguments, the prosecutor argued that Horal's testimony about what happened was not consistent and not believable. The prosecutor also commented on Baker's motivation for her testimony and stated that her testimony was "laughable." 2 VRP (January 24,

2017) at 328. The prosecutor also argued that Veysey and Horal's father were credible witnesses because their story made common sense. Lastly, the prosecutor stated, "That's the story of what happened and you have an abiding belief that that's what happened and there's an assault in the second degree, so convict Luis Horal of that crime. Thank you." 2 VRP (January 24, 2017) at 330. Defense counsel did not object.

The jury found Horal guilty as charged. Horal then filed a CrR 7.5 motion for a new trial, arguing the trial court erred by limiting voir dire to 20 minutes and the prosecutor's comments during closing arguments amounted to misconduct. The trial court denied Horal's motion.

Horal appeals.

## ANALYSIS

A.    JURY VOIR DIRE

Horal argues that the trial court violated his right to a fair jury trial by imposing unreasonable time limits on jury voir dire. We disagree.

A trial judge has considerable discretion in shaping the limits and extent of voir dire. *State v. Davis*, 141 Wn.2d 798, 825, 10 P.3d 977 (2000). This discretion is limited only by the need to assure a fair trial by an impartial jury. *State v. Frederiksen*, 40 Wn. App. 749, 752, 700 P.2d 369, *review denied*, 104 Wn.2d 1013 (1983). "Absent an abuse of discretion and a showing that the accused's rights have been substantially prejudiced thereby, the trial judge's ruling as to the scope and content of voir dire will not be disturbed on appeal." *Id.* at 752-53.

Here, the trial court did not abuse its discretion in suggesting a time limit on voir dire. Each attorney was given 20 minutes to question the venire with an additional 10 minutes for rebuttal

questions. Additionally, the trial court allowed this time limit to "be expanded, if needed, on request." 1 VRP (January 23, 2017) at 5.

Horal argues that defense counsel was unable to complete full questioning of the potential jurors' qualifications to serve on the jury and that the time constraint forced defense counsel to look at his watch often, which was viewed negatively by the potential jurors. But the record does not support Horal's argument that more time was needed. Defense counsel not only did not object to the guidelines, he also did not request additional time during voir dire, even though the trial court advised counsel that they could. Furthermore, defense counsel did not use the additional 10 minutes allotted for rebuttal questioning and declined the court's offer of additional time for questioning after the State was granted additional time. Moreover, Horal does not show how the impaneled jury was prejudiced against him because his defense attorney looked at his watch. The trial court did not abuse its discretion.

B.    PROSECUTORIAL MISCONDUCT

Horal next argues that prosecutorial misconduct violated his right to a fair trial. We disagree.

To prevail on a claim of prosecutorial misconduct, a defendant must establish "that the prosecutor's conduct was improper and prejudicial." *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). We first determine whether the prosecutor's conduct was improper, and then turn to whether the misconduct resulted in prejudice. *Id.* at 760. Since defense counsel did not object during trial, Horal must show that the alleged misconduct was " 'so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized

by an admonition to the jury.' " *State v. Thorgerson*, 172 Wn.2d 438, 443, 258 P.3d 43 (2011) (quoting *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994), *cert. denied*, 514 U.S. 1129 (1995)).

Prosecuting attorneys have wide latitude during closing arguments to argue facts and reasonable inferences from the evidence. *Thorgerson*, 172 Wn.2d at 453. This latitude allows a prosecutor to "freely comment on witness credibility based on the evidence." *State v. Lewis*, 156 Wn. App. 230, 240, 233 P.3d 891 (2010). We review alleged prosecutorial misconduct in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury. *Emery*, 174 Wn.2d at 764 n 14.

Here, the prosecutor stated:

> For [Horal] to say he came in all cool, calm and collected . . . . It's not consistent with what the other witnesses said. It's not consistent with our common sense in how a person would react in that situation. It's not consistent with what ended up happening. He comes in all cool, calm and collected, but somehow some guy ends up on the ground with a broken arm? It's not consistent and it's not believable.

2 VRP (January 24, 2017) at 296. The prosecutor continued by first pointing out that Horal testified that his testimony at trial was "exactly" what he told the investigating officer on the night of the incident and then the prosecutor stated, "we know that's not true." 2 VRP (January 24, 2018) at 296. The prosecutor then stated, "You've got to come up with something a little bit better than that. . . . [H]e came up with a better story. But he didn't come up with a believable story." 2 VRP (January 24, 2017) at 297. Defense counsel did not object.

Turning to Baker's testimony, the prosecutor stated, "[S]he doesn't want her boyfriend to get in trouble so she came in here to give him a hand." 2 VRP (January 24, 2017) at 299. And

5

regarding testimony from Veysey and Horal's father, the prosecutor said, "Because [they] are the credible people here and because their story makes common sense, the State believes it's proved its case beyond a reasonable doubt." 2 VRP (January 24, 2018) at 304. Defense counsel did not object.

Later, in rebuttal, the prosecutor stated, as to Baker's testimony, "[T]hat one in particular is kind of laughable." 2 VRP (January 24, 2017) at 328. Lastly, the prosecutor stated, "That's the story of what happened, and you have an abiding belief that that's what happened and there was an assault in the second degree so convict Luis Horal of that crime. Thank you." 2 VRP (January 24, 2018) at 330. Defense counsel did not object.

Each of the prosecutor's arguments relates to witness credibility based on the evidence.[1] The prosecutor referred to the evidence that Horal was not calm when he walked inside his father's home, that Horal and Baker gave different versions of the facts to the investigating officer, and that Horal's father and Veysey were more credible because their stories matched and they did not change. Thus, the prosecutor's arguments were proper.

Nevertheless, even assuming the prosecutor's arguments amounted to misconduct, Horal fails to demonstrate that the arguments affected the jury's verdict. Since defense counsel did not object during trial, Horal must show that the alleged misconduct was " 'so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized

---

[1] We note that the prosecutor's statements that Baker's testimony "is kind of laughable" and that Veysey and Horal's father "are credible people" taken in isolation may seem improper. 2 VRP (January 24, 2017) at 303, 328. However, based on the totality of the prosecutor's argument, the statements were not improper.

by an admonition to the jury.' " *Thorgerson*, 172 Wn.2d at 443 (quoting *Russell*, 125 Wn.2d at 86). Horal fails to establish that any of the challenged statements were incurably flagrant and ill intentioned. Any error could have been cured by a prompt instruction. Accordingly, Horal's prosecutorial misconduct argument fails.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, Horal contends that his defense counsel was ineffective for failing to object to the 20-minute limit on jury voir dire and the prosecutor's closing arguments. We disagree.

To demonstrate ineffective assistance of counsel, Horal must show both (1) that defense counsel's conduct was deficient and (2) that the deficient performance resulted in prejudice. *State v. Estes*, 188 Wn.2d 450, 457-58, 395 P.3d 1045 (2017) (citing *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Performance is deficient if it falls below an objective standard of reasonableness. *Estes*, 188 Wn.2d at 458. Counsel's conduct is not deficient if it can be characterized as legitimate trial strategy or tactics. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). Prejudice occurs where there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *Estes*, 188 Wn.2d at 458. We need "not address both prongs of the ineffective assistance test if the defendant's showing on one prong is insufficient." *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726, *review denied*, 162 Wn.2d 1007 (2007).

Based on our discussion above, the trial court's jury voir dire time limits and the prosecutor's closing arguments were proper. Accordingly, Horal cannot show that defense counsel's decision not to object to these matters fell below an objective standard of reasonableness.

No. 50006-0-II

Since Horal cannot show deficient performance, his ineffective assistance of counsel arguments fail.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, C.J.

Bjorgen, J.