**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59503-6-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| DAVID CAMACHO, | |
| Appellant. | |

CHE, J. — David Camacho appeals his conviction for first degree child molestation. At trial, the jury heard testimony from MH describing a 2011 incident during which Camacho rubbed her thigh and another incident in 2013 during which Camacho held her on a bed, removed her pants and underwear, and rubbed her vagina. Camacho denied that anything inappropriate had ever happened.

Camacho appeals arguing that the State committed prosecutorial misconduct during voir dire and closing argument, and that he was deprived of a fair trial because the jury instructions did not require the jury be unanimous. We disagree and affirm.

FACTS

When MH was five or six, she went on vacation to Saipan with her mother. On the trip, she was introduced to David Camacho. Camacho flew home with MH and moved into her family's home. Camacho would pick MH and her brothers up from the school bus and spend time with them until her parents got home from work.

One day in 2011, when MH was in first or second grade, she was home alone with Camacho. Camacho took MH into his bedroom and started tickling her. Camacho made comments to MH of a sexual nature, "So he was basically saying like oh, do you want it? Like, oh, like looking at me, kind of just—I don't know how to explain it. Admiring my body. . . . Like, looking in my pants." 4 Rep. of Proc. (RP) (Feb. 26, 2024) at 388. Camacho then rubbed MH's inner thigh. MH pushed herself away from Camacho and screamed at him "I don't want this," and "no." 4 RP (Feb. 26, 2024) at 389. After she left the room, Camacho came to her and told her not to tell her mom. MH told her mom about the incident a week later. About a month or two later, Camacho moved out of MH's family home.

When MH was in third grade in 2013, Camacho picked her and her younger brother up from the school bus stop. Camacho was babysitting them while MH's parents were out of the house. Camacho told MH to sit on the bed, and MH asked to play a game on his phone. The two were lying side by side when Camacho put a pillow on top of MH's legs and private area. Camacho started rubbing her inner thigh and lightly brushing the top of her vagina. Camacho pulled down MH's pants and underwear and rubbed the outside of her vagina while breathing hard. MH tried to move to the other end of the bed, but Camacho pulled her back and held her to where he was laying so she could not move. MH eventually claimed she needed to go shower, and Camacho let her go. MH went to her room, locked the door, and cried. Camacho came and tried to enter her room. MH screamed at him "why did you do that?" 4 RP (Feb. 26, 2024) at 397.

Several years later, MH told her middle school counselor about the incident. The counselor reported it to child protective services who contacted law enforcement.

The State charged Camacho by amended information with first degree child molestation.

During motions in limine, the State sought to admit Evidence Rule (ER) 404(b) evidence of the 2011 "uncharged incident for purposes of proving intent and planning." 1 RP (Feb. 20, 2024) at 49. The State explained the uncharged incident was an "attempted sexual assault of a very similar nature to the [2013] incident that was charged" and "a limiting instruction would be sufficient to ameliorate the prejudicial effect." 1 RP (Feb. 20, 2024) at 50-51. The State's representations clearly indicated that it would rely on the 2013 incident to prove the charge against Camacho. Over Camacho's motion to exclude the same evidence, the trial court ruled it would admit testimony about the 2011 incident as ER 404(b) evidence. The trial court and the parties treated the testimony about the 2011 incident as ER 404(b) evidence and relied on the 2013 incident to prove the charge against Camacho.[1]

During voir dire, the State asked the potential jurors a series of questions on their thoughts on sexual assault and the type of evidence one might expect to see. The State concluded by asking:

> I want to kind of tie all of this together. We talked maybe the disclosure may be down the road some time after the incident. There may not be physical evidence. Does anybody here feel like they would not be able to convict based on testimony alone? No responses.
>
> All right. I think I'm going to end there then.

3 RP (Feb. 22, 2024) at 296. Camacho did not object.

MH testified at trial consistent with the aforementioned facts. Camacho also testified at trial. He denied ever touching MH in 2011 or in 2013.

---

[1] It does not appear that the trial court made this distinction clear to the jury.

Camacho proposed a full set of jury instructions, which did not include a *Petrich*[2] instruction. The trial court asked Camacho if he wanted a limiting instruction on the prior 2011 incident, and Camacho declined. The trial court then noted that there were no significant differences between Camacho's proposed instructions and the State's proposed instructions and assembled a final packet. After reviewing the instructions, Camacho stated, "The defendant has no objection to the Court's instructions or the failure to give an instruction." 5 RP (Feb. 27, 2024) at 489-90.

The trial court's jury instructions did not include a *Petrich* instruction. The to-convict instruction informed the jury that to find Camacho guilty of first degree child molestation it had to find beyond a reasonable doubt that Camacho had sexual contact with MH between April 28, 2005, and April 26, 2017.

During its closing argument, the State reviewed the to-convict instruction with the jury, connecting its evidence to the elements.

> So the element that's really at issue here is element No. 1, that on or between April 28, 2005, and April 26, 2017, the defendant had sexual contact with [MH]. So let's talk about the date first. *We've already established that this incident happened in 2013 when [MH] was in third grade, so we know that 2013 is between April 28, 2005, and April 26, 2017.*

5 RP (Feb. 27, 2024) at 500 (emphasis added). The State then recounted MH's specific testimony around the 2013 incident. Later in the State's closing argument, the State distinguished the 2011 incident from the charged conduct,

> The significance of [the 2011] incident and the progression of the defendant's behavior towards her over time shows that he was manipulating his relationship with her to make the sexual abuse possible and to attempt to keep it secret. So

---

[2] *State Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984).

consider that first incident when you're considering *the actual touching, the actual molestation for which the defendant is charged*."

5 RP (Feb. 27, 2024) at 505.

During his closing argument, Camacho emphasized that lack of corroborating evidence supporting MH's testimony, "Not a witness, not one piece of substantiating evidence other than the testimony of the alleged victim herself." 5 RP (Feb. 27, 2024) at 512. Camacho referenced voir dire and repeated his point,

> Is this situation any different than the example I gave you in jury selection about saying I'm from Boston? I sound like I'm from Boston. You wanted more proof than that. Why shouldn't you ask for it here? Not a witness, not one piece of substantiating evidence other than the testimony of the alleged victim herself.

5 RP (Feb. 27, 2024) at 517.

In its rebuttal closing argument, the State urged the jury to find MH credible under the jury instructions. The State also referenced voir dire

> Now, I asked during jury selection if there was anybody who would not be able to convict based on testimony alone. None of you said that you couldn't convict based on testimony alone and, in fact, in order to convict, it is not necessary that the testimony of the alleged victim be corroborated.
>
> If you find—looking through all of those credibility factors and applying them to [MH]'s testimony, if you find that she is credible based on those factors, that is enough.

5 RP (Feb. 27, 2024) at 520. Camacho did not object to the State's closing or rebuttal arguments.

The jury found Camacho guilty. Camacho appeals.

ANALYSIS

I. PROSECUTORIAL MISCONDUCT

Camacho argues that the State committed prosecutorial misconduct during voir dire and closing argument. We disagree.

5

Prosecutorial misconduct may deprive a defendant of their constitutional right to a fair trial. *State v. Davenport*, 100 Wn.2d 757, 762, 675 P.2d 1213 (1984). In such a claim, the defendant must show (1) that the prosecutor made improper comments and (2) that the comments were prejudicial. *State v. Emery*, 174 Wn.2d 741, 759-60, 278 P.3d 653 (2012). Prejudicial comments are those with a substantial likelihood of affecting the verdict. *Id*. at 760.

Because Camacho failed to object at trial, the errors he complains of are waived unless he establishes that the misconduct was "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Id.* at 760-61. To do so, he must show that (1) no curative instruction would have obviated any prejudicial effect of the misconduct and (2) there is a substantial likelihood that the misconduct affected the jury's verdict. *Id*. at 761. Our primary focus is on whether the prejudice caused by the misconduct could have been cured. *Id*. at 762.

A prosecutor may commit misconduct if they, during voir dire, prejudice the jury against a particular party or indoctrinate the jury. *State v. Monday*, 171 Wn.2d 667, 676, 257 P.3d 551 (2011). We review a prosecutor's comments during closing argument in the context of the entire case. *State v. Thorgerson*, 172 Wn.2d 438, 453, 258 P.3d 43 (2011).

Voir dire should not be used "'to educate the jury panel to the particular facts of the case, to compel the jurors to commit themselves to vote a particular way, to prejudice the jury for or against a particular party, to argue the case, to indoctrinate the jury, or to instruct the jury in matters of law.'" *State v. Frederiksen*, 40 Wn. App. 749, 752, 700 P.2d 369 (1985) (quoting *People v. Williams*, 29 Cal.3d 392, 325, 628 P.2d 869 (1981)). It appears that no published Washington case has elaborated on what actions constitute compelling jurors to commit themselves to vote a particular way. However, other states have addressed similar issues and

6

have held that case-specific hypotheticals and commitment questions may be excluded from voir dire.

In Utah, it is improper to use voir dire "as a tool to indoctrinate the jury on a party's argument or bolster anticipated witness testimony." *State v. Williams*, 2018 UT App 96, ¶ 37, 427 P.3d 434. The Court of Appeals of Utah has applied this rule to reverse a conviction where a prosecutor asked questions that were "premised on facts—presented as hypotheticals—that mirrored the actual facts of [the] case." *Id*. at ¶ 39. And in Texas, "[a] question based on facts peculiar to the case on trial may be properly excluded if it requires jurors to commit themselves before hearing the evidence of the case." *DeLeon v. State*, 867 S.W.2d 138, 140 (Tex. App. 1993).

This principle of excluding hypothetical questions only if they include case-specific facts is consistent with the limits of voir dire as expressed in *Frederiksen*. *See* 40 Wn. App. at 752 (voir dire should not be used for educating jurors to the particular facts of the case, compelling jurors to commit themselves to voting a particular way, prejudicing the jury for or against a particular party, arguing the case, indoctrinating the jury, or instructing the jury in matters of law).

Camacho contends that the State committed prosecutorial misconduct during voir dire by asking "Does anybody here feel like they 'would not be able to convict based on testimony alone?'" Br. of Appellant at 14 (quoting 5 RP (Feb. 27, 2024) at 296). Camacho describes the State's question as "improper indoctrination by eliciting a prior commitment." Br. of Appellant at 14. According to Camacho, this "improper indoctrination" was used during rebuttal closing when the State reminded the jury of voir dire, arguing, "Now, I asked during jury selection if

there was anybody who would not be able to convict based on testimony alone and, in fact, in order to convict, it is not necessary that the testimony of the alleged victim be corroborated." 5 RP (Feb. 27, 2024) at 520.

But the State's hypothetical question during voir dire did not improperly implicate the unique facts of the case, nor did it commit potential jurors to a verdict. Rather, it sought to assess whether the potential jurors could follow RCW 9A.44.020(1), which provides, "In order to convict a person of any crime defined in [chapter 9A.44 RCW] it shall not be necessary that the testimony of the alleged victim be corroborated."

And the State's reference to the voir dire question during its closing argument was part of its rebuttal to Camacho's closing argument urging the jury to find him not guilty due to a lack of corroborating evidence. The unobjected to rebuttal argument was not improper. Rather, it was a response to the defense's argument and encouraged the jury to follow its instructions on credibility and the noncorroboration statute. "[E]ven improper remarks by the prosecutor are not grounds for reversal 'if they were invited or provoked by defense counsel and are in reply to his or her acts and statements, unless the remarks are not a pertinent reply or are so prejudicial that a curative instruction would be ineffective." *State v. Weber*, 159 Wn.2d 252, 276-77, 149 P.3d 646 (2006) (quoting *State v. Russell*, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)).

Even if we assume the State's question and rebuttal closing argument were improper, they were not so flagrant and ill-intentioned that the resulting prejudice could not have been cured with a jury instruction. Had Camacho objected to the voir dire hypothetical and his objection been sustained, the trial court could have issued an instruction to the jurors to remain impartial and open minded, and the State would have known not to reference the voir dire

question during closing arguments. Had Camacho objected to the State's rebuttal closing argument and his objection been sustained, the trial court could have instructed the jury to rely on its instructions on credibility, reasonable doubt, and the noncorroboration statute. Accordingly, Camacho waived any error by failing to object to the State's hypothetical question during voir dire or to the State's closing argument. Camacho's prosecutorial misconduct argument fails.

## II. JURY UNANIMITY

Camacho also argues that his conviction must be reversed because the jury instructions failed to ensure a unanimous verdict. We disagree based on the invited error doctrine.

"'To convict a person of a criminal charge, the jury must be unanimous that the defendant committed the criminal act.'" *State v. Bobenhouse*, 166 Wn.2d 881, 892, 214 P.3d 907 (2009) (quoting *State v. Camarillo*, 115 Wn.2d 60, 63, 794 P.2d 850 (1990)). When the evidence indicates that several distinct criminal acts have been committed, but the defendant is charged with only one count of criminal conduct, jury unanimity must be protected. *State Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984). To protect unanimity, the State may elect on which act it relies for conviction, or the jury must be instructed that all 12 jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt. *State v. Barrington*, 52 Wn. App. 478, 480, 761 P.2d 632 (1988). Washington labels such a jury instruction a "*Petrich* instruction." A trial court's failure to give a *Petrich* instruction when warranted violates a defendant's state constitutional right to a unanimous jury verdict and the United States constitutional right to a jury trial. *Camarillo*, 115 Wn.2d at 64 (quoting *State v. Kitchen*, 110 Wn.2d 403, 409, 756 P.2d 105 (1988)).

Nevertheless, the invited error doctrine precludes appellate review of an alleged error affecting even a constitutional right of a defendant. *State v. Henderson*, 114 Wn.2d 867, 870-71, 792 P.2d 514 (1990). "The invited error doctrine is a strict rule that precludes a criminal defendant from seeking appellate review of an error he helped create." *State v. Carson*, 179 Wn. App. 961, 973, 320 P.3d 185 (2014). In *State v. Corbett*, 158 Wn. App. 576, 592, 242 P.3d 52 (2010), we held that where the defendant proposed jury instructions that did not include a *Petrich* instruction, the invited error doctrine precluded him from challenging on appeal for the first time the trial court's failure to provide a *Petrich* unanimity instruction.

Here, as in *Corbett*, Camacho proposed a full set of jury instructions that did not include a *Petrich* instruction. The trial court asked Camacho if he wanted a limiting instruction on the 2011 incident admitted pursuant to ER 404(b), and Camacho declined. The trial court then noted that there were no significant differences between Camacho's proposed instructions and the State's proposed instructions and assembled a final packet. After reviewing the instructions, Camacho stated, "The defendant has no objection to the Court's instructions or the failure to give an instruction." 5 RP (Feb. 27, 2024) at 489-90.

Because Camacho did not propose a *Petrich* instruction, declined the trial court's proposal to give a limiting instruction as to the prior incident admitted pursuant to ER 404(b), and did not object to the trial court's instructions, we hold that Camacho invited the error he now raises. Accordingly, we decline to review this alleged error.

We affirm.

No. 59503-6-II

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Che, J.

We concur:

Cruser, C.J.

Veljacic, J.